Kelli PURVIS, Plaintiff,

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,**
**Defendant.**

**No. CIV. 98–1044–JO.**

United States District Court,
D. Oregon.

July 6, 1999.

---

David B. Lowry, Portland, OR, Tim D. Wilborn, Tim Wilborn Attorney at Law, Portland, OR, for Plaintiff.

William W. Youngman, Asst. U.S. Attorney, Dist. of Oregon, United States Attorney's Office, Portland, OR, Lucille G. Meis, Social Security Administration, Office of General Counsel, Seattle, WA, for Defendant.

ROBERT E. JONES, District Judge.

Claimant Kelli Purvis seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").

This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, this court concludes that the case must be remanded to the Commissioner for further proceedings consistent with this opinion.

## ADMINISTRATIVE HISTORY

On March 30, 1995, claimant filed concurrent applications for DIB and SSI, alleging disability from a bipolar disorder since March 15, 1994. The SSI application had a protective filing date of March 9, 1995. The applications were denied initially and on reconsideration. On August 17, 1995, claimant requested a hearing. At a hearing[1] held before an Administrative Law Judge ("ALJ"), on July 24, 1996, claimant, who was represented by counsel, testified, as did her ex-husband, William Hall, her mother, Darla Purvis, and a vocational expert. On August 29, 1996, the ALJ issued a decision denying claimant's applications. The ALJ's decision became the final decision of the Commissioner on March 3, 1998, when the Appeals Council declined review.

## STANDARD OF REVIEW

 This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir.1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. *See* 20 C.F.R. §§ 404.1520 and 416.920. The ALJ

first determined that claimant met the disability insured status requirements on March 15, 1994, and continued to meet them through the date of his decision, and that she had not engaged in substantial gainful activity since March 15, 1994.

Second, the ALJ found that claimant has severe impairments due to costochondritis (chest pain), diabetes, obesity, an affective disorder and a substance addiction disorder, but that her impairments, alone or in combination, do not meet or equal the criteria for any of the listed impairments described in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.

In the next step of the evaluation, the ALJ determined that claimant retains the residual functional capacity to perform work-related activities except for work involving lifting or carrying more than 25 pounds frequently or 50 pounds occasionally, standing continuously for more than one half hour or walking for more than one mile at a time. The ALJ further determined that claimant has slight restriction of activities of daily living and slight difficulties in maintaining social functioning, but that her deficiencies of concentration and persistence of pace would seldom result in failure to complete tasks in a timely manner.

The ALJ next determined that claimant's past relevant work as a goldsmith did not involve work-related activities that would be precluded by the above limitations. In making this determination, the ALJ found claimant's subjective complaints not credible to the extent that they would preclude her past relevant work, and that her impairments do not prevent her from performing her past relevant work. Accordingly, the ALJ found claimant not to be disabled as defined by the Social Security Act, and denied her applications for benefits.

---

1. Evidently two hearings were held, on August 17, 1995, and on July 24, 1996. The Court Transcript Index states that the transcript for the August 17, 1995, hearing is "not available for inclusion." There is no other information in the record concerning this hearing.

## STATEMENT OF FACTS

Claimant was nearly 36 years old at the time of the hearing. She had the equivalent of a high school diploma, having earned a GED. She had past relevant work as a goldsmith.

The record reflects that claimant has suffered from psychiatric problems, most significantly a bipolar disorder, for a number of years. Between June 1993 and April 1996, she engaged in a number of suicide attempts and episodes of suicidal ideation. She also has an extensive history of chemical dependency, including alcohol and methamphetamine abuse, which she apparently brought under control following treatment in the Fall of 1994. (*See* Tr. 500, 519, 524.) In addition, in April 1996, claimant was diagnosed with diabetes, which was not controlled with oral medication. In May 1996, claimant was started on insulin injections, and by July 19, 1996, she was experiencing "significant improvement in blood sugar control." (Tr. 559.) It appears that when the diabetes was first diagnosed, claimant was taken off lithium, which may have caused a temporary increase in symptoms from her bipolar disorder. (*See* Tr. 544, 559, 147–48).

Despite the volume of claimant's medical and other evidence, there appears to be no serious dispute between the parties concerning claimant's psychiatric and medical history or the testimony adduced during the hearing. Rather, the parties' dispute concerns the ALJ's findings and conclusions based upon that information. I have reviewed the record carefully, and am satisfied that the ALJ's factual summary of the evidence is accurate and for the most part complete. Accordingly, I will not reiterate that information except to the extent necessary to address specific issues.

## DISCUSSION

Claimant argues that the ALJ erred in failing to fully develop the record, in his treatment of an opinion by claimant's counselor, Shawn Graham, in his interpretation of the medical evidence, and in his treatment of claimant's and her witnesses' testimony.

In response, the Commissioner argues, among other things, that claimant waived all of her arguments because she failed to raise them at the administrative level. Because this argument, if accepted, is dispositive, I will address it first.

In *Meanel v. Apfel,* 172 F.3d 1111 (9th Cir.1999), *as amended,* (9th Cir. June 22, 1999), the Ninth Circuit extended the general rule that appellants must raise issues at their administrative hearings in order to preserve them on appeal to Social Security benefits cases. *Meanel,* 172 F.3d at 1115 (*citing Avol v. Secretary of Health & Human Serv.,* 883 F.2d 659, 660 (9th Cir. 1989)). The court held:

> at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal. * * * We will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice * * *.

*Meanel,* 172 F.3d at 1115. In *Meanel,* the claimant attempted to rely on new evidence that she admittedly failed to raise either before the ALJ or the Appeals Council. The Ninth Circuit wisely concluded that, because claimant was "represented by counsel who knew that all relevant evidence should have been brought to the ALJ's attention," no issue of fairness prevented application of the waiver rule to claimant's proposed new evidence in that case.

The Ninth Circuit's extension of the waiver rule to Social Security cases promises to greatly advance judicial efficiency in the arena of Social Security. The question in this case, however, is whether claimant has attempted to inject any new issues or evidence that she did not present during the administrative process. The Commissioner asserts that claimant waived all of her present arguments, a statement so broad as to be of no use in

guiding this court's decision. I am concerned, however, that one of claimant's issues—whether the ALJ fully and fairly developed the record—is an issue that should first be raised at the administrative level to allow the Commissioner to correct the error, if error there was. With that caveat, however, because the Commissioner's waiver argument fails to focus on any specific issue and is, therefore, too conclusory to be helpful to the court, I turn to the merits of claimant's arguments.

### 1. The ALJ's Alleged Failure to Develop the Record

██ Claimant argues that the ALJ failed to fully and fairly develop the record, evidently because he did not seek out additional information concerning what claimant is able to do in spite of her impairments. I conclude that this argument lacks merit in the circumstances of this case.

As a preliminary matter, I note that in almost every single Social Security review case assigned to me in recent months, this identical argument routinely appears, whether or not the argument has any basis in the particular record. Taken at face value and considering the frequency with which this issue is raised, counsel seems to be urging the court to adopt a bright-line rule that would require the Commissioner in every case to, in effect, develop a claimant's case for him or her regardless of the quality or quantity of evidence already of record. In *McGee v. Apfel,* CV 97–6036–JO (Opinion and Order Dec. 12, 1997), I declined to adopt such a bright-line rule, and I adhere to that decision now.

██ Claimant argues in this case that information on what she is able to do is missing in her medical reports. Claimant's record contains voluminous medical records, psychiatric reports and evaluations, hospital admission and discharge reports, most of which document acute or short term critical care episodes. The inquiries the Commissioner did, in fact, make (*see* Tr. 518, 520, 523), yielded only one meager lay opinion suggesting that claimant's psychiatric problems might render her unfit for work. The medical record, as developed, did not contain any ambiguities or inconsistencies, and was adequate for the ALJ to render a decision. Moreover, despite the volume and with the one exception discussed below, the record is notable for the absence of any mention that claimant's impairments limit her ability to perform work-related activities. Consequently, I conclude that the ALJ did not err in failing to more fully develop the already extensive record. I do not agree with claimant that the Social Security regulations mandate a different result.

Moreover, it is my view, and absent binding Ninth Circuit authority to the contrary I would be inclined to rule on appropriate argument, that the issue of whether an ALJ has failed to fully and fairly develop the record is waived under *Meanel, supra,* if claimant's counsel fails to preserve the issue by raising it the administrative level, where the Commissioner would at least have a fair opportunity to remedy the error, if there was one.

### 2. The ALJ's Treatment of Shawn Graham's Opinion

██ Claimant next argues that the ALJ erred in failing to accept the April 28, 1995, opinion of her counselor, Shawn Graham, that claimant was not capable "of holding a job at this time." (Tr. 519). As the ALJ correctly identified, Graham is not a physician or licensed or certified psychologist, and her reports and opinions do not qualify as "medical evidence * * * from an acceptable medical source" as required by the Social Security regulations. *See* 20 C.F.R. §§ 404.1523, 416.913. Thus, the ALJ was required to give Graham's opinion only the credit he must give any other lay opinion, *i.e.,* the ALJ may reject the testimony of a lay witness as long as he 'or she provides reasons that are germane to that witness. *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir.1993).

In this case, the ALJ carefully explained his rationale for rejecting Graham's opinion with reasons germane to her, pointing to inconsistencies between Graham's own observations of claimant's condition and her conclusion that claimant cannot work, and, more importantly, explaining that Graham's conclusion was contradicted by the records and reports of acceptable medical sources. The ALJ's reasons are supported by the record, and I find no error in the ALJ's treatment of Graham's opinion.

### 3. *The ALJ's Interpretation of the Medical Evidence*

In her next argument, claimant evidently disputes the ALJ's finding that she was "stable." The records, however, clearly support that finding. Moreover, if claimant means to suggest that a finding of "stable," rather than "cured," is not enough to permit an inference that she can work (*see* Plaintiff's Opening Brief, p. 5 n. 2), the court is unaware of any medical literature, and claimant points to none, that shows bipolar disorder to be curable, as opposed to controllable.

Claimant also contends that the ALJ misinterpreted her Global Assessment of Functioning ("GAF") scores, pointing to Dr. Swift's provisional assessment, on May 10, 1995, that claimant's GAF scores were "60 currently, and 50 average functioning over the past year." (Tr. 527.) According to claimant, a GAF score of 50 is generally considered supportive of a finding of disability. *See Sousa v. Chater*, 945 F.Supp. 1312, 1326 (E.D.Cal.1996), *rev'd*, 143 F.3d 1240 (9th Cir.1998).[2]

Claimant does not argue, and presumably cannot based upon any persuasive Ninth Circuit authority, that a GAF score of 50, by itself, requires a finding of disability. The Commissioner argues, reasonably, that disability determinations should be made on a case by case basis, considering all the evidence, including GAF ratings.

Dr. Swift's evaluation contains much more than her provisional diagnosis and current and past GAF ratings. Dr. Swift was careful to explain that her evaluation of claimant was complicated by claimant's past substance abuse, and cautioned that confidence in any diagnosis would require segregating substance abuse as a factor. Dr. Swift explained:

> It is clear that [claimant] has had a myriad of extremely difficult and traumatic life experiences, beginning from her earliest childhood. Diagnostically, the symptoms of alcohol and methamphetamine abuse, bipolar disorder, and dissociative identity disorder * * * are difficult to unravel. Specifically, the symptoms of substance abuse of this type may mimic the severe affective disorders and/or dissociative identity disorder. One way to identify the principal diagnosis is to clarify whether psychiatric symptoms were present prior to major substance abuse; that is, to establish a careful time line of onset of symptoms. This is not possible in [claimant's] case since, according to her report, she has abused multiple substances since her pre-teen years.

> Another way to sort out diagnoses is to clarify which psychiatric symptoms remain after withdrawal of substance abuse. There are varying opinions regarding how long a person needs to be clean and sober before confidence can be placed in diagnosing any residual symptoms; common recommendations are for 6 –12 months of sobriety. [Claimant] has been clean and sober for 9 months. Therefore, it is unclear whether symptoms have established a baseline post substance abuse.

> There is insufficient information to establish a diagnosis of dissociative identi-

---

**2.** The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.1994), describes an individual with a GAF rating of 50 as having serious impairment in social or occupational functioning, and between 51 and 60 as having moderate symptoms or moderate difficulty in social, occupational, or school functioning.

ty disorder based upon the results of this evaluation. * * *

In sum, diagnostic clarification [of] these complex issues is difficult.

(Tr. 526–27). Interestingly, Dr. Swift's principal Axis I diagnosis is "Polysubstance abuse and dependence," followed by "Major Depressive Disorder, Recurrent." She also notes: "[Rule out] Bipolar Disorder." (Tr. 527.)

In view of Dr. Swift's own extensive effort to qualify her assessment of claimant, coupled with her assignment of a present GAF rating of 60, I do not agree with claimant that the provisional past GAF rating of 50 required the ALJ to find her disabled.

### 4. *The ALJ's Treatment of Claimant's and Her Witnesses' Testimony*

Finally, claimant asserts that the ALJ improperly rejected her testimony and that of her ex-husband and mother. Based upon my review of the evidence, the parties' arguments, and the ALJ's decision, I find that claimant's arguments concerning the ALJ's credibility determinations lack merit, with one notable exception discussed below.

In a Work Activity Report claimant completed at some point during the administrative process,[3] claimant responded to the question "Explain how your condition now keeps you from working" by stating (among other things): "I am not able to keep my hands [steady] to do the detailed work that is [necessary] to do jewelry work." (Tr. 212.) During the hearing, claimant testified that she can no longer work as a goldsmith because "I'm too shaky for one * * * you have to be real steady. My hands shake real bad." (Tr. 143.) Later during her testimony, she testified that when she has one of her insulin reactions, "I sweat a lot and I shake real bad * * *." (Tr. 145.)

During the hearing, the vocational expert described the work as a goldsmith as sedentary work, highly skilled, that "requires a steady hand * * * for precise work," "finger and hand dexterity," and "[g]ood eye hand coordination." (Tr. 163.) Because the ALJ did not include claimant's claimed shakiness in the hypothetical question, however, the vocational expert was not asked to consider the possible effect of that limitation and, consequently, testified that claimant could perform her past work as a goldsmith.

■ Because she did present objective evidence of an impairment or impairments that reasonably could be expected to cause shakiness as a symptom, it was incumbent on the ALJ to provide clear and convincing reasons for rejecting her testimony on that issue. *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). In this case, the ALJ did not mention claimant's allegation of hand shakiness. Because the vocational expert's testimony was dependent on the absence of such a symptom, the ALJ had an obligation to explain his failure to include it in the hypothetical question.

Accordingly, this case must be remanded to the Commissioner for further proceedings, but on the limited issues identified below. Specifically, the Commissioner must determine if claimant does, in fact, suffer from shakiness that would prevent her from engaging in her past work as a goldsmith. If so, the Commissioner must evaluate whether claimant has the ability to engage in other work that exists in the national economy. Because as explained above, I find that all of claimant's other arguments lack merit, the Commissioner is not required to reconsider those issues.

### CONCLUSION

The decision of the Commissioner is REMANDED for further proceedings consistent with this opinion.

---

3. The document is undated.