Winston MOORE, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of the Social Security Administration, Defendant–Appellee.

No. 98–56318.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2000

Filed June 22, 2000

Lawrence D. Rohlfing, Santa Fe Springs, California, for the plaintiff-appellant.

Jeffrey H. Baird (argued), Assistant Regional Counsel, Esther H. La (on the brief), Assistant Regional Counsel, Social Security Administration, San Francisco, California, for the defendant-appellee.

Before: FERNANDEZ, TASHIMA, and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Appellant Winston Moore appeals the decision of the district court granting summary judgment to Kenneth Apfel, Commissioner of the Social Security Administration. Moore challenges the final decision of the Commissioner denying his applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

Moore argues that the decision of the Administrative Law Judge, as upheld by the Appeals Council and the district court, was erroneous in three respects. First, Moore argues that the ALJ erred by not properly following the mandate of the district court during the first remand. Second, Moore argues that the ALJ who made the final decision on Moore's application violated the Commissioner's Hearings, Appeals, and Litigation Manual ("HALLEX") by hearing the claim a third time after the second remand. Finally, Moore argues that the decision of the ALJ finding that a sufficient vocational base exists was not supported by substantial evidence.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background

Winston Moore applied for disability insurance benefits and supplemental security income benefits in February 1991. Moore alleged that he had been disabled since February 19, 1988, due to an injury to his right knee and leg. He also complained of limitations in his arms and of psychiatric and emotional impairments.

After administrative denials of his applications for disability insurance and supplemental security income benefits, Moore came before ALJ David Ganly on December 29, 1993, for a hearing on his application. Based in part upon the testimony of a vocational expert (VE), ALJ Ganly found that Moore was "not disabled" for purposes of benefits, and denied the claim.

ALJ Ganly's decision was upheld by the Appeals Council. Moore then brought an action for judicial review in the district court. After reviewing the ALJ's decision, Magistrate Judge Edwards remanded the case for further development of the record, noting that ALJ Ganly had found that Moore could sit for "four to six" hours, but had only asked the VE to determine what jobs were available in the national economy to someone with Moore's impairments who was able to sit for six hours.

On remand, the ALJ held another hearing, and issued a second decision. He clarified that the reference in his earlier ruling to "four to six" hours sitting meant "up to six" hours during a workday. ALJ Ganly again found that Moore could perform a significant number of jobs in the national economy, and therefore again denied the claim.

The Appeals Council reviewed ALJ Ganly's decision, and found that there was substantial evidence to support the decision. It noted, however, that on April 18, 1995, Moore had turned 50, which placed him in a different age category. The Appeals Council therefore remanded the claim with directions to consider whether significant numbers of jobs existed after April 18, 1995—i.e. after he turned 50 and moved into a higher age category. The ALJ's findings with respect to the period before Moore turned 50 were affirmed, and Moore has not challenged this finding.

On remand for the second time, ALJ Ganly again considered the claim. ALJ Ganly considered whether significant gainful employment was available to Moore now that he was 50. Once again, the ALJ took testimony from the VE, and once again found that, for the period beginning at Moore's fiftieth birthday, significant gainful employment was still available. Accordingly, ALJ Ganly found Moore not disabled for purposes of the new age category. Moore now contends in this appeal that under HALLEX his case should have been reassigned to a different ALJ following the second remand, and that ALJ Gan-

ly should not have been allowed to hear his case a third time.

The Appeals Council upheld the ALJ's determination and rejected Moore's complaint that ALJ Ganly should not have been allowed to handle the case again. Moore once again moved for judicial review in the district court. Magistrate Judge Edwards awarded summary judgment to the Commissioner, finding that the clarification by the ALJ upon the first remand had been proper and that the ALJ's interpretation of the HALLEX regulations regarding assignment of the same ALJ to the second remand had been reasonable. This appeal ensued.

## II. Analysis

■ The district court's grant of summary judgment is reviewed de novo. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir.1995). This Court must affirm if it "determine[s] that substantial evidence supports the findings of the administrative law judge (ALJ) and that the ALJ applied the correct legal standards." *Id.* (citations omitted).

### A. The ALJ's clarification on remand

Upon review of ALJ Ganly's first decision denying benefits, the district court noted that while the ALJ had found that Moore could sit for four to six hours, the hypotheses given to the VE for use in analyzing how many jobs existed in the economy assumed Moore could sit for six hours and no testimony was elicited as to how many jobs were available if Moore could only sit for four hours. There was some confusion as to what exactly "four to six" meant. Moore's counsel argued that it meant that Moore could sit for four hours on a bad day, and six on a good one. The district court noted that if the range was indeed four to six, it was inexact, and testimony would have to be elicited to determine what jobs would be available at the low end of the range—four hours—in order to make a correct finding. Accord-

ingly, the district court remanded for further development of the record.

On remand, ALJ Ganly clarified that he had found that Moore could sit for up to six hours in a workday. The ALJ explained that he had found that Moore could only stand for two to three hours a day, and the four to six hours of sitting simply meant that he was able to sit the balance of the hours of a normal eight hour workday. Consequently, the ALJ did not ask the VE to examine the number of jobs available to Moore if he could only sit for four hours, as that would not be consistent with or relevant to the ALJ's findings.

Moore argues that the remand order required ALJ Ganly to take evidence regarding the jobs available at the low end of the range (four hours) and did not permit the ALJ to change his previous capacity assessment of four to six hours. By changing that capacity assessment to "up to six hours," Moore argues, the ALJ went beyond the narrow confines of the remand order.

■ Significantly, in the order granting summary judgment that is the subject of this appeal, Magistrate Judge Edwards, the same judge who entered the first remand order, rejected this crabbed interpretation of his first remand order. Magistrate Judge Edwards noted that he did not find that Moore could only sit for four hours. Instead, he simply found that the phrase used was ambiguous, and to the extent that it could not be made more precise, the lower number would have to be assumed. If the ALJ could clarify the ambiguity by making a more precise capacity assessment, he should do so. This is clearly the correct interpretation of the district court's first remand order. The order notes the ambiguity but at no time does it purport to make findings. Nor does it direct the ALJ to limit his findings on remand to a specific inquiry. Instead, the order found that the decision could not be upheld in its existing form due to ambiguity in the ALJ's findings, and remanded for further development of the record.

We adopt the district court's interpretation of its own order and find that the ALJ's clarification to remove the ambiguity was proper. As there was no medical evidence presented that Moore's incapacities limited his ability to sit, the court's finding that substantial evidence supported the ALJ's determination that Moore could sit for up to six hours is affirmed.

## B. ALJ Ganly's review of the claim for a third time on remand

After ALJ Ganly issued his second decision on the claim, the Appeals Council remanded that claim again, noting that Moore had turned 50 during the administrative process, and that while the ALJ's analysis of the period prior to age 50 was proper, further evidence relating to the existence of substantial gainful work after the age of 50 was needed. On remand for the second time, ALJ Ganly again assumed the case over the objections of Moore, who argued then, as he does now, that it was a violation of HALLEX I–2–155 for ALJ Ganly to hear the claim for a third time.

In pertinent part, HALLEX I–2–155 states:

11. *Appeals Council remand.* Flag and assign the case immediately. Appeals Council remands, including those generated by the courts, are assigned to the same ALJ who issued the decision or dismissal unless:

a) the case was previously assigned to that ALJ on a prior remand from the Appeals Council and the ALJ's decision or dismissal after remand is the subject of the new Appeals Council remand ...

HALLEX I–2–155(11). Moore argues that this provision mandated that his claim be remanded to a different ALJ, and that ALJ Ganly's hearing of the claim for a third time was reversible error.

■ The Commissioner, relying on *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), argues that HALLEX is a purely internal

manual and as such has no legal force and is not binding. We agree.

■ In order for HALLEX to have the force and effect of law, it must:

(1) Prescribe substantive rules—not interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements. To satisfy the first requirement the rule must be legislative in nature, affecting individual rights and obligations; to satisfy the second, it must have been promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress.

*United States v. Fifty–Three Eclectus Parrots,* 685 F.2d 1131, 1136 (9th Cir.1982) (internal citations and quotations omitted). It is clear that HALLEX does not provide substantive rules. "The starting point for determining if [an administrative manual] is substantive is its text." *United States v. Alameda Gateway Ltd.,* 213 F.3d 1161, 1168 (9th Cir.2000). Section I–1–001 of HALLEX, entitled "PURPOSE," states in part that:

Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff. HALLEX includes policy statements resulting from an Appeals Council en banc meeting under the authority of the Appeals Council Chair. It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Action levels.

HALLEX I–1–001. The text of this section indicates that HALLEX is strictly an internal guidance tool, providing policy and procedural guidelines to ALJs and other staff members. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law. Examining the specific provision at issue in the instant case, this provision creates no

substantive rights; it merely provides OHA staff with internal procedures for assigning cases to ALJs after a remand. Further evidence that this is a purely internal manual can be seen in the fact that HALLEX was not published in either the Federal Register or the Code of Federal Regulations, indicating that the manual was not promulgated in accordance with the procedural requirements imposed by Congress for the creation of binding regulations and was not intended to be binding. *Alameda Gateway,* 213 F.3d at 1168–69.[1] Our recent decision in *McNatt v. Apfel,* 201 F.3d 1084 (9th Cir.1999), is not to the contrary. In that case, we found that the ALJ in question violated 20 C.F.R. § 404.957, as interpreted by HALLEX I–2–425(D). *Id.* at 1088. We did not address the question of whether HALLEX provisions are independently binding. The Code of Federal Regulations is clearly binding upon the Commissioner, and the HALLEX provision found to have been violated in *McNatt* was the Commissioner's official interpretation of that binding regulation. *Id.* It was the Federal Regulation that had the force and effect of law, not HALLEX, and in the instant case, there is no underlying Federal Regulation.[2]

As HALLEX does not have the force and effect of law, it is not binding on the Commissioner and we will not review allegations of noncompliance with the manual. *See Western Radio Services Co. v. Espy,* 79 F.3d 896, 900 (9th Cir.1996) ("we will not review allegations of noncompliance with an agency statement that is not binding on the agency").

## C. The ALJ's finding of substantial gainful work

■ The determination of a claimant's eligibility for disability benefits is a se-

quential process. The only step at issue in this case is the last one, a determination whether substantial gainful work exists in the national economy for the claimant despite his impairment. If such substantial gainful work exists, the claimant is considered "not disabled," and his application is denied. 42 U.S.C. § 423(d)(2)(A); *see also* SSR 86–8. To determine if substantial gainful work exists for the claimant, the ALJ uses Medical–Vocational Guidelines ("grids") to consider claimants with substantially uniform levels of impairment. *Burkhart v. Bowen,* 856 F.2d 1335, 1340 (9th Cir.1988). When the grids do not completely describe the claimant's abilities and limitations, such as when the claimant has both exertional and nonexertional limitations (as is the case in the instant claim), the grids are inapplicable and the ALJ must take the testimony of a VE. *Id.; see also Cooper v. Sullivan,* 880 F.2d 1152, 1155 (9th Cir.1989).

■ In the instant case, the ALJ correctly enlisted the help of a VE. The testimony of the VE was that a person of Moore's age and with Moore's impairments could perform the following jobs: ticketer/labeler (1500 jobs regionally, 45,000 nationally), production assembler (5000 jobs regionally, 65,000 nationally), and garment sorter (1200 regionally, 15,000 nationally). In total, the VE found that there were 7,700 regional and 125,000 national jobs appropriate for Moore's situation. This was substantial evidence to support the finding of the ALJ that Moore was not disabled. *Young v. Sullivan,* 911 F.2d 180, 185 (9th Cir.1990); *see also Moncada,* 60 F.3d at 524 (2,300 local and 64,000 national jobs substantial evidence supporting denial of benefits); *Barker v. Secretary*

---

**1.** Moore also argues that HALLEX I–2–818 required that the claim be assigned on remand to another ALJ. As HALLEX is not binding, this argument also fails.

**2.** This is not to suggest that a provision of HALLEX would be binding simply because it

interprets a binding Federal Regulation or statute. Interpretations of statutes or Federal Regulations contained in agency manuals lack the force of law and are not entitled to *Chevron* deference by a reviewing court. *Christensen v. Harris County,* —— U.S. ——, 120 S.Ct. 1655, 1662–63, 146 L.Ed.2d 621 (2000).

*of Health and Human Serv.,* 882 F.2d 1474, 1478–79 (9th Cir.1989) (1,266 jobs significant gainful work).

Moore argues that the ALJ erred in two respects. First, he argues that the ALJ failed to consider that Moore had passed age fifty in making the determination.[3] This assertion is without merit. The ALJ's ruling notes that the remand was to consider Moore's situation now that he has entered the post-fifty "closely approaching advanced age" category. The ALJ notes that the VE was asked to consider an individual with Moore's profile. A review of the transcript notes that the VE specifically acknowledged that he was considering Moore's age at that time (52) and his category of "closely approaching advanced age." The VE's findings are specifically related in the ALJ's decision. Moore's arguments on this point are without basis in the record.

Moore's second argument is that the ALJ failed to follow SSR 83–12 when making his decision. SSR 83–12 states, in pertinent part:

2. If the exertional level falls between two rules which direct opposite conclusions, i.e. "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:

a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."

b. On the other hand, if the exertional capability is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."

c. In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining vocational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases.

SSR 83–12. Moore notes that after he reached age fifty, the grid for "sedentary" work applicable to his impairment would direct a finding of "disabled," and the grid for "light" work would direct a finding of "not disabled." Moore suffers from both exertional (difficulty standing, bending, etc.) and nonexertional (inability to work around irritating fumes, difficulty expressing himself) limitations. His exertional limitations put him between two rules. The exact place that he falls is difficult to determine as he also suffers from nonexertional limitations. When a claimant suffers from both exertional and nonexertional limitations, the grids are only a framework and a VE must be consulted. *Burkhart,* 856 F.2d at 1340; *Cooper,* 880 F.2d at 1155–56. SSR 83–12 directs that when a claimant falls between two grids, consultation with a VE is appropriate. SSR 83–12(2)(c).

ALJ Ganly therefore did exactly what the caselaw and SSR 83–12 direct him to do—he consulted a VE. The VE testified that a person with Moore's profile could perform substantial gainful work in the economy, and accordingly the ALJ found that Moore was not disabled. 42 U.S.C. § 423(d)(2)(A). Moore argues that ALJ Ganly should have found that the upper category, "light" work, was so reduced that it was essentially equivalent to the lower category, "sedentary" work, which would have meant he was classified as "disabled."[4] However, as Moore suffered from both exertional and nonexer-

---

**3.** Moore has conceded that substantial evidence supports the ALJ's finding of "not disabled" for the period before he reached age 50.

**4.** *See* SSR 83–12(2)(b).

tional limitations, the ALJ could not have made that determination before relying upon the VE. SSR 83–12 does not mandate a finding of "disabled." Instead, it mandates the use of a VE, which was exactly the process used in this instance. Moreover, even assuming that the evidence rationally supports Moore's argument, it also clearly supports the ALJ's decision to use a VE, and his subsequent ruling. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984). The ALJ's finding that Moore was not disabled because substantial gainful work exists in the national economy was supported by substantial evidence.

## III. Conclusion

For the reasons detailed above, the decision of the Commissioner was supported by substantial evidence and in accordance with the correct legal standards, and accordingly the judgment of the District Court for the Central District of California is AFFIRMED.