Barbara J. DAVIS, Plaintiff—
Appellant,

v.

Jo Anne BARNHART, Commissioner of Social Security Administration,* Defendant—Appellee.

No. 01–35946.

D.C. No. CV–00–06211–FR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2003.

Decided July 28, 2003.

---

* Jo Anne Barnhart is substituted for her predecessor, Larry G. Massanari, as Social Security Commissioner. Fed. R.App. P. 43(c)(2).

Before O'SCANNLAIN, FERNANDEZ, and FISHER, Circuit Judges.

### MEMORANDUM **

Barbara Davis appeals the district court's affirmance of the Social Security Commissioner's denial of her application for benefits. Davis contends that the denial was error because her bipolar disorder has rendered her unable to perform either her past relevant work as a plywood mill laborer or a significant number of other jobs in the national economy. The facts and prior proceedings are known to the parties, and are restated herein only as necessary.

### I

Davis first contends that the administrative law judge ("ALJ") erred in

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

failing to request medical source reports from two examining psychologists and therefore the ALJ failed to properly develop the record. "Medical source statements are medical opinions submitted by acceptable medical sources ... about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." SSR 96–5p. While the ALJ is *generally* required to request that acceptable medical sources provide these statements with their medical reports," *id.* (emphasis added), the governing regulation states that "the lack of the medical source statement will not make the report incomplete." 20 C.F.R. § 404.1513(b)(6).

We conclude that the absence of medical source reports from Drs. Villanueva and Betts–Doughty does not, in itself, make the record incomplete. *See Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir.1995). Where such reports are lacking, "our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id; see also Purvis v. Apfel,* 57 F.Supp.2d 1088, 1092 (D.Or.1999) (finding that, where medical source statements are lacking, the court's inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the record). In the present case, the ALJ went to significant lengths to develop the record regarding Davis' RFC. That record includes medical conclusions by Drs. Villanueva and Betts–Doughty as well as testimony at the hearing by both a medical expert, Dr. Moulton, and a vocational expert—all of which support the ALJ's conclusion that Davis is not disabled. Mindful that "the responsibility for deciding [the claimant's] residual functioning capacity rests with the Administrative Law Judge or Appeals Council," 20 C.F.R. § 404.1546, we conclude that the ALJ's

decision was supported by substantial evidence.

## II

■ Davis next contends that the ALJ erred in failing to explain why he disregarded the findings of a state agency reviewing physician regarding Davis' ability to work. The ALJ "may not ignore" the opinions of state agency physicians concerning "the nature and severity of an individual's impairment(s)," and indeed the ALJ "must explain the weight given to these opinions in their decisions." SSR 96–6p. In the present case, Dr. LeBray, a state agency physician, determined that "fast-paced, complex routines," such as Davis' former work at a plywood mill, were "precluded" by her impairment. This determination was clearly relevant to the ALJ's determination—at step four of the five-step sequential evaluation process—that Davis retained sufficient residual functional capacity to return to her former job at the mill.

The Commissioner counters that the ALJ did not purport to rely on the opinion of Dr. LeBray. While correct as a matter of fact, the Commissioner's statement begs the question. The ALJ was not required to *rely* on Dr. LeBray's opinion, but rather to explain in his decision what weight, if any, he gave to that opinion. This, the ALJ did not do. The error, however, is not fatal because, even if the ALJ had properly considered Dr. LeBray's opinion and concluded at step four that Davis could not return to the plywood mill, there was substantial evidence supporting his alternative conclusion, at step five, that Davis is capable of performing a significant number of jobs in the national economy. A VE testified at the hearing that a person with Davis' limitations would be capable of working as a garment sorter, dishwasher, or maid, and that, in the na-

tional economy, there were 10,000 garment sorter jobs, 40,573 dishwasher jobs, and 231,406 positions for maids. Thus, while the ALJ did err in failing to explain the weight given to Dr. LeBray's opinion, the ALJ's ultimate conclusion was supported by substantial evidence.

### III

■ Davis' third claim is that the ALJ erred in rejecting the opinion of the nurse who treated her. The ALJ decided to accord less weight to the opinion of Nurse Myers because the ALJ determined that (1) she had become an advocate on Davis' behalf and (2) her RFC determinations were inconsistent with the weight of the evidence. Davis contends that there was insufficient evidence to support either conclusion.

While an ALJ may not disregard an opinion merely because it was provided at the request of counsel, see Reddick v. Chater, 157 F.3d 715, 726 (9th Cir.1998), an opinion may be disregarded (1) where there is no objective basis for it, see Burkhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir.1988), or (2) there is evidence that the opinion was crafted to assist the claimant. See Saelee v. Chater, 94 F.3d 520, 522–23 (9th Cir.1996).

The ALJ noted that Myers' conclusions regarding Davis' RFC were inconsistent with her treatment notes. In reaching this conclusion, the ALJ relied on the testimony of Dr. Moulton, who stated that the treatment notes did not reflect the severity of Myers' RFC ratings. Where there are inconsistencies between treatment notes and the opinion offered, the ALJ is permitted to consider the fact that the opinion was solicited. See Nguyen v. Chater, 100 F.3d 1462, 1464–65 (9th Cir.1996). In light of Dr. Moulton's testimony, the ALJ's conclusion that Nurse Myers' opinion could be disregarded is supported by substantial evidence.

### IV

■ Davis next contends that the ALJ improperly provided the vocational expert with a hypothetical that did not account for limitations that the ALJ found Davis to have. Specifically, Davis notes that, although the Psychiatric Review Technique Form ("PRTF") adopted by the ALJ showed that Davis suffers from deficiencies in concentration, persistence, and pace that often render her unable to complete tasks in a timely fashion, the ALJ did not include language regarding timely completion of tasks in the hypothetical offered to the VE.

We have held that the failure to complete tasks in a timely fashion is not itself a functional limitation but rather is derivative of deficiencies in concentration, persistence, and pace. Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir.2002). In this case, the ALJ's hypothetical did note that Davis was limited in her "[a]bility to maintain attention and concentration for extended periods," and thus sufficiently accounted for Davis' difficulty completing tasks in a timely manner. As a result, "the hypothetical posed ... include[d] all of the claimants functional limitations, both physical and mental supported by the record," and so can be considered reliable. Id. Accordingly, we conclude that the ALJ did not err in failing to include language regarding the timely completion of tasks in the hypothetical posed the VE.

### V

■ "To determine if substantial gainful work exists for the claimant, the ALJ uses Medical–Vocational Guidelines ('grids') to consider claimants with substantially uniform levels of impairment." Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.2000).

Davis' final argument is that the ALJ did not properly apply the grids and, as a result, failed to consider the erosion of Davis' occupational base. Because the ALJ found that Davis was capable of performing only three out of the 2500 unskilled medium, light, and sedentary occupations of which the grids take notice, she contends that the ALJ should have applied the grid rules for sedentary work rather than those for medium work. Under the grid rules for sedentary work, Davis would have been considered disabled.

Where, as here, a claimant falls in between two grids—one of which would direct a finding of "disabled" and the other a finding of "not disabled"—the ALJ is required to consult a VE before making his determination. *See* SSR 83–12, SSR 83–14. We have twice before dealt with claims similar to the one Davis advances—that is, where the effect of a claimant's limitations on the occupational base is less clear—and, in both instances, we held that the ALJ was required to consult a VE, but was *not* required to make a finding of "not disabled." *See Thomas,* 278 F.3d at 960; *Moore,* 216 F.3d at 869–71.

Here, the ALJ properly consulted the VE. Upon doing so, the ALJ identified three occupations Davis was capable of performing for which there were some 280,000 jobs available nationally. The ALJ's conclusion, therefore, was in accordance with the regulations and supported by substantial evidence.

AFFIRMED.

FISHER, Circuit Judge, concurring.

I fully concur in Parts II, III, IV and V of the memorandum disposition. Respectfully, however, I write separately with regard to the majority's conclusion in Part I that the ALJ's failure to request medical source statements does not necessitate remand. It is an open question in this circuit whether the ALJ's failure necessarily requires remand or, as the majority holds, requires remand only when the decision of the ALJ is not supported by other substantial evidence in the existing record. The majority resolves this issue by relying on an out-of-circuit precedent and a district court opinion, neither of which is binding upon us.

Nor does an examination of the relevant regulations and Social Security rulings firmly answer the question. Social Security Ruling 96–5p speaks in terms of the mandatory nature of the ALJ's duty to request medical source statements. It states that the ALJ *"must* consider" such opinions and that the ALJ is "generally *required* to request" the statements, not that he generally *should* request them. SSR 96–5p (emphasis added). Similarly, the governing regulation states that the ALJ *"will* request a medical source statement about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(b)(6) (emphasis added).

The majority invokes the regulation's proviso that "the lack of the medical source statement will not make the report incomplete." *Id.* But I do not think this was intended to undermine the ALJ's obligation to request the documents in the first instance. For example, it is not unreasonable that although the ALJ has a duty to make the initial request, he or she is not prevented from going forward when a physician does not comply.

At base, my reservations about the majority's "substantial evidence" approach are twofold. First, it risks changing what is "generally required" of an ALJ from a duty to a more discretionary option. Second, it then places on the court the burden of reviewing the entire record to determine whether the failure to request source statements is reversible error. Not only

are we ill-equipped to parse and weigh competing medical evidence, but we must also speculate whether close calls or ambiguities in the record would have been resolved differently had the medical source statements not been omitted. That is why I would prefer to reinforce the clear mandate to the ALJ to flesh out the record in the first instance.

That said, I am persuaded that the medical source statements of Drs. Villanueva and Betts–Doughty would not undercut the ALJ's determination because both physicians indicated that Davis experienced only moderate symptoms. Thus I concur in the result the majority has reached in Part I.