David B. LOWRY, Plaintiff–Appellant,

v.

Jo Anne BARNHART, in her capacity as Commissioner of the Social Security Administration; Dan Hyatt; Riley Atkins; Bennett Engelman, Defendants–Appellees.

No. 01–35775.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 8, 2002.*

Filed May 16, 2003.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Rosemary B. Schurman, Kirkland, WA, for the appellant.

Victoria B. Chhagan, Assistant Regional Counsel, Social Security Administration, Seattle, WA, for the appellees.

Before REAVLEY,** KOZINSKI and W. FLETCHER, Circuit Judges.

## OPINION

KOZINSKI, Circuit Judge.

In this case, social security lawyer David Lowry tries to live out what must be every lawyer's fantasy by suing the judge who ruled against him one time too many. Lowry seeks a writ of mandamus to have Administrative Law Judge Dan Hyatt investigated and kicked off his future cases. We consider whether the writ can be put to this novel use.

1. Lowry represents social security claimants, and Hyatt is an administrative law judge who often presides over his cases. Lowry says Hyatt uses "intimidation and anger as a tactic to shorten [his] hearings," refuses to hear evidence and denies him cross-examination. Hyatt also supposedly told two claimants that Lowry was a "poor attorney who does a poor job." Lowry began filing motions to recuse Hyatt from his cases, and Hyatt responded with letters to Lowry's clients defending his impartiality and encouraging them to ask Hyatt about their "rights to representation."

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

Hyatt, for his part, doesn't think much of Lowry. He says Lowry uses too many leading questions, fails to submit necessary medical records and questionnaires, and acts in a generally "disrespectful and contemptuous" manner. He says that Lowry once called him a "baldfaced liar" on the record and then sat at counsel table laughing and smirking.

In December 1998, Lowry filed a bias complaint with the Social Security Administration. Making little headway, he filed this lawsuit in federal district court in August 1999, invoking the Mandamus and Venue Act, 28 U.S.C. § 1361. He seeks three forms of relief: He wants the Administration to complete review of his December 1998 bias complaint. He wants Hyatt and two alleged "co-conspirator" ALJs disqualified from his future cases. Finally, he wants the Administration to promulgate final procedures for handling bias complaints. The district court denied relief, and Lowry now appeals.

■ **2.** Mandamus is available only when "(1) the plaintiff's claim is clear and certain; (2) the duty is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Or. Natural Res. Council v. Harrell,* 52 F.3d 1499, 1508 (9th Cir.1995) (internal quotation marks omitted).[1] If a plaintiff has no legal entitlement to the relief sought, a "clear and certain" claim cannot exist, and the writ will not lie. Lowry identifies several constitutional and regulatory authorities, and we consider each in turn.

**a.** Lowry's strongest argument relies on the Administration's 1992 "interim" bias complaint procedures. In the early 1990s, a congressional subcommittee expressed concern over bias in the Administration's adjudication of claims. The Administration responded by publishing interim procedures for more effectively handling bias complaints. *See* Social Security Administration Procedures Concerning Allegations of Bias or Misconduct by Administrative Law Judges, 57 Fed.Reg. 49,186 (Oct. 30, 1992). It indicated that permanent procedures were under development and "should be finalized in approximately six months." *Id.* at 49,187. This turned out to be an optimistic prediction—over ten years later, the agency still operates under its interim rules.

These procedures address ALJ bias against both claimants and their attorneys. They state that the "SSA is committed to providing every claimant and his or her representative fair and unbiased treatment in the handling of all claims." *Id.* at 49,-186. "Every complaint," we are told, "will be reviewed or investigated in a timely manner." *Id.* The procedures contemplate an initial inquiry by the Regional Chief ALJ. He then forwards the results to the Chief ALJ at the Office of Hearings and Appeals, who notifies the complainant whether a formal investigation will be conducted.

The Administration's swiftness in promulgating final procedures is apparently matched only by the blinding speed with which it handles individual complaints. Lowry's complaint, a one-page document that referred to incidents in only two hearings, was filed in December 1998 but was still pending in May 2001 when the district

---

**1.** Lowry takes issue with this well-settled standard. Relying on *Michigan Head Start Directors Ass'n v. Butz,* 397 F.Supp. 1124, 1137–38 (W.D.Mich.1975), and Clark Byse & Joseph V. Fiocca, *Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative* *Action,* 81 Harv. L.Rev. 308, 320 (1967), he argues that the "incomprehensible 'ministerial-discretionary distinction'." is a "technical trapping[]" that Congress long since jettisoned. Incomprehensible though the distinction may be to Lowry, it is nonetheless the law.

court dismissed his case. When the court rejected Lowry's Rule 60(b) motion in March 2002, there was still no indication that the Chief ALJ had completed his review.

Be that as it may, we cannot review the Administration's inertia unless the interim procedures create judicially enforceable duties. This is a threshold jurisdictional question, *see United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1167–68 (9th Cir.2000), so we decide it first, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

■ An agency's regulations may create judicially enforceable duties. *See Workman v. Mitchell*, 502 F.2d 1201, 1205 (9th Cir.1974). But not all agency pronouncements do so. To be judicially enforceable, a pronouncement must "prescribe substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice," and must have been "promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress." *United States v. Fifty–Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir.1982) (internal quotation marks omitted); *cf. Schweiker v. Hansen*, 450 U.S. 785, 789–90, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

No court has yet addressed whether the Administration's 1992 interim bias complaint procedures prescribe judicially enforceable duties. We now conclude they do not. By their terms, they are a mere "[n]otice of procedures," 57 Fed.Reg. at 49,186, and rules of procedure generally are not enforceable, *see Fifty–Three (53) Eclectus Parrots*, 685 F.2d at 1136. The procedures do not invoke any congressional grant of authority, nor were they subject to notice and comment—the usual prerequisites to agency rulemaking. The procedures are in many respects like

agency guidance manuals, which we have previously held unenforceable. *See Moore v. Apfel*, 216 F.3d 864, 868–69 (9th Cir. 2000); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 901 (9th Cir.1996); *Fifty–Three (53) Eclectus Parrots*, 685 F.2d at 1136.

■ The procedures do differ from typical guidance manuals in two respects. First, they were published in the Federal Register. Publication alone, however, does not make a procedure judicially enforceable. The Freedom of Information Act requires many documents to be published in the Federal Register, *see* 5 U.S.C. § 552(a)(1), including "rules of procedure," *id.* § 552(a)(1)(C). That an agency must make its procedures generally known does not imply a right to enforce those procedures in court.

■ Second, the language of the procedures is not entirely hortatory. The procedures state that they "will *ensure* that . . . [e]very complaint will be reviewed or investigated in a timely manner." 57 Fed. Reg. at 49,186 (emphasis added); *cf. Moore*, 216 F.3d at 868 (manual merely provided "guidance" to agency staff); *Alameda Gateway*, 213 F.3d at 1168 (same). But force of language alone cannot create substantive rules where the congressionally prescribed procedures for promulgating such rules have not been invoked.

■ Although we conclude that the bias procedures are not judicially enforceable, we are not unsympathetic to Lowry's predicament. The Administration's unexplained decade-long delinquency in promulgating final procedures and its lackadaisical handling of Lowry's complaint raise serious concerns about its commitment to the values the procedures purport to embrace. Unfortunately for Lowry, not every agency shortcoming is subject to correction in the courts. The Administration created internal proce-

dures and disclosed them to the public, but it did not create legally enforceable rights; we therefore lack authority to grant mandamus relief.

■ **b.** Lowry offers several other authorities, but we have little difficulty rejecting them. First, he claims that ALJ bias violates his constitutional due process right to practice his profession. This claim may have been inspired by our ill-fated decision in *Gabbert v. Conn,* 131 F.3d 793 (9th Cir.1997), *rev'd,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999), where we held that illegal execution of a search warrant on an attorney violated his constitutional right to practice his profession. 131 F.3d at 800–01. The Supreme Court was not impressed by this conclusion, observing that precedent provided only "scant metaphysical support." 526 U.S. at 291, 119 S.Ct. 1292. It indicated that "a complete prohibition of the right to engage in a calling" might implicate due process, but that "the sort of brief interruption which occurred" in that case did not. *Id.* at 292, 119 S.Ct. 1292.

Hyatt's alleged interference with Lowry's practice does not share the brevity of the interference in *Gabbert,* but it is similar in severity in that both fall far short of a complete prohibition. Lowry doesn't claim that Hyatt barred him from retaining clients or appearing at hearings. At worst, he may have a harder time finding clients because of his losing track record. This indirect and incidental burden on professional practice is far too removed from

a complete prohibition to support a due process claim.[2]

■ Lowry next argues that certain Social Security Administration regulations impose a duty of impartiality. He points to two provisions that provide "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. §§ 404.940, 416.1440. Unlike the 1992 interim bias procedures, however, these regulations address only bias against a *party,* not bias against a party's representative. Because they create no duty in favor of Lowry, they cannot support his mandamus claim.

■ Next are two internal procedure manuals, the Hearings, Appeals and Litigation Law Manual (HALLEX) and the Program Operations Manual System (POMS). We have previously considered both publications and concluded that neither imposes judicially enforceable duties. *See Moore,* 216 F.3d at 868–69 (HALLEX); *Hermes v. Sec'y of Health & Human Servs.,* 926 F.2d 789, 791 n. 1 (9th Cir.1991) (POMS).[3]

■ Finally, Lowry argued below that various codes of judicial conduct—namely, the ABA's Model Code of Judicial Conduct, its Model Code of Judicial Conduct for Federal Administrative Law Judges and the Oregon Code of Judicial Conduct—impose enforceable duties on ALJs. The district court rejected the first two authorities because the Administration had

---

**2.** Litigants, of course, have due process rights to unbiased decisionmakers. But their lawyers may not invoke those rights vicariously. *See Gabbert,* 526 U.S. at 292–93, 119 S.Ct. 1292.

**3.** Lowry argued below that *Briggs v. Sullivan,* 886 F.2d 1132 (9th Cir.1989), compels the opposite result. In *Briggs,* we indicated that "the Secretary should be enjoined from paying benefits in the future to any putative rep-

resentative who has not been investigated according to, and has not met the requirements of, his own regulations and POMS procedures." *Id.* at 1147. But we made this statement on review of denial of a preliminary injunction and held only that the "plaintiffs ha[d] carried their burden of demonstrating at least that a *substantial question* exists as to the legality of the Secretary's actions." *Id.* (emphasis added).

not specifically adopted them as binding and the third because Lowry had not timely raised the argument. Lowry offers no meaningful response to these rulings and has accordingly waived his claims. *See Martinez–Serrano v. INS,* 94 F.3d 1256, 1259–60 (9th Cir.1996).

None of the authorities Lowry offers creates legally enforceable duties. The district court therefore correctly rejected his claims.

■ **3.** We have one final matter to address. The Administration filed, along with its answering brief, a one-page letter dated April 14, 2002, from Acting Chief ALJ Frank Cristaudo to Lowry. The letter is apparently the culmination of the agency's three-and-a-half year effort to decide whether to investigate Lowry's December 1998 bias complaint. It concludes that both Hyatt and Lowry acted unprofessionally, but that the evidence of bias was insufficient to warrant a formal investigation.

The letter bears a tan cover with the prominent caption "Supplemental Excerpts of Record."[4] It is, however, nothing of the sort. The district court docket shows that the letter was never made a part of the record. Indeed, it could not have been, because it post-dates not only the notice of appeal but even Lowry's opening brief on appeal.

Save in unusual circumstances, we consider only the district court record on appeal. *See Barilla v. Ervin,* 886 F.2d 1514, 1521 n. 7 (9th Cir.1989). Federal Rule of Appellate Procedure 10(a) explains which materials constitute the record. Fed. R.App. P. 10(a). And Circuit Rule 30–1 provides that the appellant (and, if necessary, the appellee) shall prepare "excerpts" of that record. *See* 9th Cir. R. 30–

1.1(a). The rather obvious implication is that the "excerpts of record" are just that: "excerpts" of the "record."

This limitation is fundamental. As a court of appeals, we lack the means to authenticate documents submitted to us, so we must be able to assume that documents designated part of the record actually are part of the record. To be sure, the fact that a document is filed in the district court doesn't resolve all questions of authenticity, but it does ensure that both opposing counsel and the district court are aware of it at a time when disputes over authenticity can be properly resolved. Litigants who disregard this process impair our ability to perform our appellate function.

There are exceptions to the general rule. We may correct inadvertent omissions from the record, *see* Fed. R.App. P. 10(e)(2)(c); *cf. United States v. Garcia,* 997 F.2d 1273, 1278 (9th Cir.1993), take judicial notice, *see* Fed.R.Evid. 201(f); *EEOC v. Ratliff,* 906 F.2d 1314, 1318 n. 6 (9th Cir.1990), and exercise inherent authority to supplement the record in extraordinary cases, *see Dickerson v. Alabama,* 667 F.2d 1364, 1366–68 & n. 5 (11th Cir.1982). Consideration of new facts may even be mandatory, for example, when developments render a controversy moot and thus divest us of jurisdiction. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n. 23, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) ("It is the duty of counsel to bring to the federal [appellate] tribunal's attention, *'without delay,'* facts that may raise a question of mootness."). One constant runs through all these exceptions, however: Only the court may supplement the record. "[It is a] basic tenet of appellate jurisprudence ... that parties may not unilaterally supplement the rec-

---

**4.** Under circuit rules, an appellee's excerpts of record are known as "supplemental excerpts of record." *See* 9th Cir. R. 30–1.6. They are "supplemental" in the sense that they supplement the appellant's excerpts—not the record itself.

ord on appeal with evidence not reviewed by the court below." *Tonry v. Sec. Experts, Inc.,* 20 F.3d 967, 974 (9th Cir.1994). Litigants should proceed by motion or formal request so that the court and opposing counsel are properly apprised of the status of the documents in question.

Sadly, this is not the first time a party has graced us with so-called "excerpts of record" that have never before seen the light of courtroom day. It is, however, a particularly serious violation. Lowry's strongest argument was that the Administration had not complied with its own procedures for handling bias claims by completing review of his complaint. He relied heavily on this argument in his opening brief to our court. Two weeks after he filed his brief, the agency conveniently plugged this hole in the record by generating a letter that undercut Lowry's claim. It then filed it as an excerpt of record and relied on it in its own brief. It's certainly conceivable that this one-page letter was the natural terminus of a three-and-a-half year review process, but its timing creates at least some appearance of a connection between appellees' need for the evidence and its sudden materialization.

Appellees' unilateral supplementation of the record was also unfair to Lowry. Because the agency generated the letter *after* Lowry filed his opening brief, he argued the case on a record different from the one the agency relied on. The appellate process is for addressing the legal issues a case presents, not for generating new evidence to parry an opponent's arguments.

We ordered the parties to brief whether appellees should be sanctioned. Appellees essentially concede the impropriety of their conduct and move to strike the excerpt. They nonetheless ask that we refrain from imposing sanctions, explaining that "[i]t was not their intent to act inappropriately" and that, although the letter "may not have met the legal standard for supplementing the record," it was nonetheless not "irrelevant, because it was responsive to an assertion made by Mr. Lowry" that "they knew ... was no longer true at the time they filed their Appellees' Brief."

We are not satisfied by this response. The issue is not whether the letter "met the legal standard for supplementing the record." *That* might be a question open to reasonable dispute.[5] Appellees never moved to supplement the record. They merely designated the letter an excerpt of record and referred to it as such in their brief.

Lowry asks for two sanctions. First, he seeks to supplement the record with his own materials in response. Because we will shortly grant appellees' motion to strike, this request will soon be moot. As an alternative sanction, he asks us to "strike the defendant-appellees' appearance in this case, reverse the District Court's decision, and remand the case for entry of judgment in plaintiff's favor ... includ[ing] an order requiring the SSA to finalize and publish the final judicial bias procedures promised 10 years ago." While not wanting in ambition, this proposed sanction is, we believe, excessive.[6]

Nonetheless, merely striking appellees' supplemental excerpts seems insufficient to deter abuse. If the only penalty for including forbidden material in the ex-

---

**5.** The government might have argued, for example, that by completing the complaint procedure, it rendered one of Lowry's claims moot and thus deprived us of jurisdiction over it. The claim is not, in fact, moot; Lowry's subsequent filings satisfy us that factual disputes remain as to whether the Administra-

tion actually complied with its own procedures.

**6.** Lowry has not drawn our attention to any precedent imposing agency rulemaking as a sanction for a FRAP violation.

cerpts of record is removal of that material, it's hard to see why anyone would think twice before violating the rule. Circuit rules authorize monetary sanctions, *see* 9th Cir. R. 30–2(d), and we believe this is the appropriate remedy in this case.[7] Lowry responded to the government's improper excerpts by addressing them in his reply brief, filing a motion to supplement the record and preparing a supplemental brief at our direction. As the government notes, however, Lowry's motion to supplement improperly cites an unpublished memorandum disposition of our court and therefore violates Circuit Rule 36–3. See *Hart v. Massanari*, 266 F.3d 1155 (9th Cir.2001). Lowry shall therefore recover his reasonable attorney's fees for his reply brief and supplemental brief, but not for his motion to supplement.[8]

The case is referred to the Appellate Commissioner, who is authorized to enter a judgment in the appropriate amount. Appellees' motion to strike the supplemental excerpts of record is GRANTED.

**AFFIRMED.**

---

**7.** We have declined to impose monetary sanctions in other cases, but they involved less serious violations. *See Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 593–95 (9th Cir.2002) (counsel contended that the documents were, in fact, part of the record); *Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1242–43 (9th Cir. 1998) (finding only one page in a five-volume excerpts of record improperly included, and implying that future violations would not be treated so lightly); *Tonry*, 20 F.3d at 973 (declining to impose sanctions where the "issue is one of first impression"). We have certainly awarded monetary sanctions for less serious infractions. *See, e.g., Kano v. Nat'l Consumer Coop. Bank*, 22 F.3d 899 (9th Cir. 1994) (imposing $1500 sanction for incorrect line spacing and footnote typeface).

The government argues that its improper excerpt of record did not "vexatiously or unreasonably increase the cost of litigation." The literal terms of Rule 30–2 make that a prerequisite only for denial of costs under subsection (c) and not monetary sanctions under subsection (d), although conceivably the standard may have been intended to apply to both. *Cf. Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1083 (9th Cir.1988) (construing a prior version of Rule 30–2). Assuming the standard does apply, we find it met here.

**8.** Although these filings also addressed other issues, prorating the award to reflect only time spent on this issue would be impractical and insufficient to effect the purpose of the sanction.