NOT FOR PUBLICATION



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| STEPHEN TILLOTSON,<br><br>             Plaintiff - Appellant,<br><br>   v.<br><br>BONNIE DUMANIS, individually and in her official capacity as District Attorney for the County of San Diego and COUNTY OF SAN DIEGO, a municipal corporation,<br><br>             Defendants - Appellees. | No. 12-55580<br><br>D.C. No. 3:10-cv-01343-WQH-MDD<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted December 4, 2013
Pasadena, California

Before: PREGERSON and CHRISTEN, Circuit Judges, and SILVER, Senior District Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Roslyn O. Silver, Senior District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

Stephen Tillotson appeals the district court's order granting summary judgment in favor of Bonnie Dumanis and the County of San Diego.[1] We affirm.

At oral argument, Tillotson's counsel conceded the only claim presented in this appeal is Tillotson's claim based on the alleged denial of his right to procedural due process.[2] "We analyze a procedural due process claim in two steps. [T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *United States v. Juvenile Male*, 670 F.3d 999, 1013 (9th Cir. 2012) (internal quotation marks and citations omitted).

On the first step, "it is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations." *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 n.4 (9th Cir. 1994). But "the precise contours of that liberty interest remain largely undefined." *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999). Existing

[1] Because the parties are familiar with the facts and procedural history, we do not recount them here.

[2] Also at oral argument, the Court requested supplemental briefing from Defendants to explain the delay in placing Tillotson on the Brady Index. Defendants submitted the supplemental brief and the Court has considered it.

authority demands a showing of interference that approaches a "complete prohibition of the right to engage in a calling." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003).

At summary judgment, Tillotson did not point to evidence in the record establishing his placement on the Brady Index ("Index") resulted in something close to a complete prohibition of his right to pursue his chosen profession. The record established Tillotson applied for, and was rejected from, a number of law enforcement positions in Southern California *prior* to his placement on the Index. And Tillotson pointed to only four positions he applied for but did not receive *after* his placement on the Index. Evidence of four rejections "fall[s] far short of [establishing] a complete prohibition" on Tillotson obtaining employment as a police officer. *Lowry*, 329 F.3d at 1023. Thus, Tillotson's procedural due process claim does not survive the first step of the analysis.

Even if Tillotson had established deprivation of a protected liberty interest, summary judgment was still appropriate based on the second step of the procedural due process analysis. That step requires we determine "whether the procedures attendant upon [the] deprivation were constitutionally sufficient." *Juvenile Male*, 670 F.3d at 1013. We evaluate the process provided to Tillotson under the test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). That test "instructs us to

3

balance (1) the private interest affected by the official action; (2) the risk of erroneous deprivation and the probable value of additional procedural safeguards; and (3) the governmental interest, including the fiscal and administrative burdens of additional procedures." *Humphries v. Cnty. of Los Angeles*, 554 F.3d 1170, 1193 (9th Cir. 2009) (reversed on other grounds by *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447 (2010)).

On the first factor, Tillotson's interest in pursuing his chosen profession is significant but not unlimited. *See Conn*, 526 U.S. at 291-92 (holding "due process right to choose one's field of private employment" is a "right which is . . . subject to reasonable government regulation"). On the third factor, Defendants have a strong interest in fulfilling their *Brady* obligations. *See, e.g.*, *Amado v. Gonzalez*, 734 F.3d 936, 948 (9th Cir. 2013) (noting "prosecutors are constitutionally obligated to disclose" *Brady* material). And on the second and "perhaps most important, *Mathews* factor," Tillotson did not present evidence of repeated errors regarding placement on the Index or evidence of a special need for additional safeguards. *Humphries*, 554 F.3d at 1194. Tillotson never presented an argument to the County challenging the committee's decision to include his name on the Index. Because Tillotson did not take advantage of the limited process available to

4

him, even viewing the evidence in the light most favorable to him, Tillotson cannot establish that the process provided by Defendants were inadequate.

**AFFIRMED.**

*Tillotson v. Dumanis*, No. 12-55580

**PREGERSON**, Circuit Judge, dissenting:

During his four years of public service with the San Diego County Sheriff's Department, Deputy Sheriff Stephen Tillotson received multiple commendations, stellar reports, and a promotion to Field Training Officer. But in June of 1998, Deputy Tillotson made a big mistake: he told his supervisor that he had participated in a monthly firearm qualification exercise—when he had not. The next day, Deputy Tillotson went to his supervisor and told him that, in fact, he missed taking the monthly firearm exercise, and apologized for the error of his ways. But despite his years of commendable public service to the Department as a Deputy Sheriff, Tillotson was sacked for this single lapse of judgment.

In 2000, after fully disclosing his earlier act of untruthfulness, Tillotson was hired by the Sycuan Tribal Police Department. Here again his performance record was exemplary.

In 2006, Officer Tillotson, while employed by the Sycuan Tribal Police, applied for a Special Law Enforcement Commission from the U.S. Bureau of Indian Affairs. Officer Tillotson, along with the Chief of the Sycuan Tribal Police, met separately with San Diego County Deputy DA Mike Still, Liaison to the Sycuan Tribal Police, to find out whether Officer Tillotson's earlier act of dishonesty and termination caused his name to be placed on San Diego County's

Brady index. Deputy DA Still said he "did not feel that [Tillotson] should be placed on the Brady index, given the circumstances of [his] case." Officer Tillotson then received his commission.

Officer Tillotson, always looking for ways to serve his community, applied to work as a Volunteer Reserve Police Officer with the Coronado Police Department in 2008. He again disclosed his prior mistake and termination. The Coronado Police Department contacted the San Diego DA's Office. It was only then—ten years after the initial incident, after exemplary work, and after being told by Deputy DA Still that he "did not feel that [Tillotson] should be placed on the Brady index, given the circumstances of [his] case"—that Officer Tillotson found himself ensnared in the Brady index.

Now that he is in the Brady index, Tillotson has effectively been blacklisted from police work. The Sycuan Tribal Police let him go. Coronado, Oceanside, and Riverside have turned him down for a job as a police officer.

For fourteen years, Stephen Tillotson was a good police officer, and a valuable member of the departments in which he served. But because of one transgression, he is precluded from doing the job he loves. There should be a way to remove his name from the Brady index and let him get back to work serving our neighborhoods as a good cop.