

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. CC-19-1105-GSL |
| | CC-19-1106-GSL |
| THE SUNSHINE GROUP, LLC, | CC-19-1107-GSL |
| | (Related Appeals) |
| Debtor. | |
| | Bk. No. 2:19-bk-12760-ER |
| THE SUNSHINE GROUP, LLC | |
| Appellant, | |
| v. | |
| | **MEMORANDUM**\* |
| CITY OF DANA POINT; CALIFORNIA RECEIVERSHIP GROUP; MARK ADAMS, as State Court-appointed Receiver, | |
| Appellees. | |

Argued and Submitted on March 26, 2020

Filed – April 10, 2020

Appeal from the United States Bankruptcy Court
for the Central District of California

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable Ernest M. Robles, Bankruptcy Judge, Presiding

Appearances:    Robert P. Goe of Goe & Forsythe, LLP argued for Appellant; Jennifer Farrell of Rutan & Tucker, LLP argued for Appellee The City of Dana Point; Ori Blumenfeld for Appellees California Receivership Group and Mark Adams, as State Court-appointed Receiver.

Before: GAN, SPRAKER, and LAFFERTY, Bankruptcy Judges.


**INTRODUCTION**

Appellant, The Sunshine Group, LLC, ("Debtor") appeals from two orders dismissing its chapter 11[1] case and from an order denying its motion to sell property free and clear of liens and interests. Appellees, the City of Dana Point, California, (the "City") and California Receivership Group, ("Receiver") each filed motions to dismiss the chapter 11 case and asserted that Debtor filed its petition in bad faith as a litigation tactic to evade rulings made by the state court in a receivership action involving Debtor's sole asset, a 28-room motel located in Dana Point, California (the "Property").

The bankruptcy court determined that Debtor filed the petition in bad faith and that the motion to sell was part of Debtor's bad faith scheme

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

to avoid rulings in the state court. The bankruptcy court found that the Property was Debtor's only valuable asset, Debtor was not operating and had no revenues to reorganize debts, and the case was essentially a two party dispute. The bankruptcy court concluded that Debtor filed the bankruptcy for an improper purpose to avoid the rulings of the state court pertaining to the Receiver's rehabilitation plan and the infeasibility of Debtor's development plan.

The bankruptcy court did not abuse its discretion in dismissing the case or in denying the sale motion. Accordingly, we AFFIRM the dismissal orders and the order denying the motion to sell.

## FACTS

### A.     Prepetition Events

Debtor was formed by Dr. Ramesh Manchanda in the late 1990s for the purpose of purchasing and developing commercial properties in Dana Point, California. In 1998, Debtor purchased the Property for $2.4 million. Between 1998 and 2012, Dr. Manchanda purchased several adjacent parcels of vacant land through separate entities.

For approximately 18 years, Debtor operated the Property and earned revenue. However, by about 2015, Debtor states that it was developing plans to demolish the Property and build an upgraded motel with larger rooms and more amenities.

In 2016, the City notified Debtor of several municipal code violations

3

which needed to be immediately rectified. On September 1, 2016, the City "red-tagged" the Property after a Fire and Life Safety Inspection uncovered several violations of the California Fire Code, California Building Code, and the Dana Point Municipal Code which posed an immediate fire threat and safety hazard to the public. The City issued a notice to Debtor describing the violations and requiring corrective actions to be completed by December 5, 2016.

The red tag precluded the Debtor from using the Property for any purpose until the violations were abated. After the Property was red-tagged, the Orange County Sheriff's Department received increased calls for service at the Property related to homeless individuals sleeping on the Property, attempting to break into the Property, or actually breaking in to the Property's vacant rooms. These individuals were observed using open flames in the Property, which presented a significant public safety hazard because the Property had no telephone service or utilities, and the numerous code violations had not been remediated.

Debtor states that it advised the City that it intended to demolish the Property rather than abate the code violations. Between October 2016 and January 2017, the City had several meetings with the Debtor to discuss the process to bring the Property into compliance and the potential complexities involved with Debtor's intent to demolish the Property and rebuild. In April 2017, Debtor submitted a formal application to demolish

4

the Property.

## 1. The Receivership Action

In April 2017, the City filed a nuisance action in Orange County Superior Court and moved, ex parte, for an appointment of a health and safety receiver to take possession and control of the Property. The City stated that because of the Property's status as a "low cost overnight accommodation" and a "historic resource," it expected Debtor's application to demolish to take approximately 36 months to be processed by the City and the California Coastal Commission, and ultimately to be denied. As a result of the continuing health and safety risks, the City decided to pursue the receivership action.

The state court appointed the Receiver and authorized it to take control of the Property and correct the code violations. The Receiver was permitted to borrow funds to correct the conditions and to issue a receiver's certificate to secure the debt with a super-priority lien on the Property. The state court permitted the Receiver to fund a receiver's certificate with super priority status in the amount of $55,000 for the purpose of securing the Property, cleaning it out, and obtaining bids to remediate the violations.

The state court then set a hearing to determine whether to confirm the appointment of the Receiver. Prior to the hearing, the Receiver retained Miken Construction ("Miken") to submit a bid for the remediation work.

The Receiver also filed a report indicating that an additional $943,000 would be needed to fully remediate the health and safety violations. The Debtor opposed the Receiver's remediation plan and argued that the Property should instead be demolished and the receivership should be terminated.

At the hearing, the state court confirmed the appointment of the Receiver, rejected Debtor's request to terminate the receivership, and authorized the Receiver to increase the receiver's certificate to $998,000. Dr. Manchanda agreed to fund the receiver's certificate.

The Receiver then met with the City and the Debtor to discuss the scope of the remediation project. Based on the City's requests, the Receiver retained an architectural firm experienced in historical restoration as well as structural and soils engineers to evaluate the stability of the hillside, the retaining wall, and the structural elements of the Property. The engineering reports revealed that the Property was in a seismic hazard zone and hillside movement had caused a partial failure of the retaining wall.

The Receiver developed a construction plan to remediate the hazardous conditions and abate the code violations while preserving the historical character of the Property and its low cost affordable accommodation status. The Receiver then filed a motion in state court seeking approval of additional funding of $4,063,832 for: (1) pre-construction demolition costs; (2) hillside protection and retaining wall

6

work; and (3) remaining health and safety repair costs. The Receiver attached contracts to substantiate the expenses. Debtor objected to the Receiver's request and submitted an alternate bid from another contractor. Debtor also filed a motion to terminate the receivership.

The state court determined that the Receiver's plan was reasonable and necessary to remediate the violations. The court approved the contracts for pre-construction demolition, hillside protection, and building remediation, and authorized the Receiver to incur the additional funding necessary to complete the work. The state court rejected Debtor's proposed alternative bid because it failed to include numerous necessary items, such as foundation repair and structural retrofitting. Once the funding was approved, Miken began work on the hazardous retaining wall and carport.

The state court also denied Debtor's motion to terminate the receivership and stated that although Debtor disagreed with the proposed construction and remediation costs, it failed to provide any reasonable alternative other than to repeatedly demand authorization to demolish the property. The court stated that the request to demolish the property had been rejected in the past because "[t]he purpose of the receivership here is to abate the substandard conditions at the property, while at the same time maintaining its historical character and compliance with the Coastal Act requirements; demolition would not further these goals." *Minute Order*, at 3, Case No. 30-2017-00915900-CU-PT-CJC, October 26, 2018.

Debtor appealed the ruling to the California Court of Appeal and sought an immediate stay. The Court of Appeal entered a temporary stay of the order, except for construction and repairs of the hillside which were necessary for public safety. The Court of Appeal later dissolved the stay and denied Debtor's request for a writ of supersedeas. Ultimately, Debtor dismissed the appeal.

The Receiver obtained a loan for the initial phase of the retaining wall project from Glan Investments, LLC ("Glan"), secured by a junior receiver's certificate. However, due to the pending appeal, the Receiver was unable to secure sufficient third-party funding to complete the retaining wall project or the remainder of the court-approved plan.

The Receiver filed a motion to subordinate the existing receiver's certificate held by Dr. Manchanda, and stated that the first phase of the retaining wall was complete, but lenders were unwilling to fund the remaining amounts because of the priority of Dr. Manchanda's claim. At the hearing on the Receiver's motion, the parties negotiated a resolution whereby Dr. Manchanda agreed to advance a portion of the funds to complete the retaining wall work. Based on the agreement, the state court continued the hearing.

The Receiver alleged that Dr. Manchanda reneged on the agreement so the Receiver issued a junior receiver's certificate to Miken in the amount of $871,809. The day before the continued hearing, Debtor filed its chapter

11 petition.

**B.    The Bankruptcy**

Debtor scheduled assets including the Property and two notes receivable from Rohit and Martha Ramos Manchanda, and Foothill Vascular Center. Debtor's only scheduled liabilities are attorneys' fees, loans from the Manchanda Family Trust, and debts related to the receivership.

**1.    The Motions to Dismiss**

In March 2019, the City and Receiver each filed a motion to dismiss the case. The Receiver argued that Debtor's chapter 11 filing was a bad faith litigation tactic to avoid completing and paying for the state court-approved remediation plan. The City argued that the case was filed in bad faith because Debtor had no ongoing business to reorganize, no cash flow to pay creditors, and only one asset which was inoperable until the nuisance conditions were abated. The City also argued that it was essentially a two party dispute and Debtor did not have any real creditors other than the City, insiders, and Debtor's own professionals.

Debtor opposed the motions and argued that the case was filed to preserve assets of the estate and to allow the Debtor to pay all claims in full. Debtor stated that the Receiver was now attempting to redesign and rebuild the Property to meet the City's specific interests which would require it to incur an unsustainable amount of debt that would ultimately

9

lead to foreclosure. Debtor argued that the Receiver already abated all health and safety concerns by stripping the Property of furniture, fixtures, and its electrical system, as well as removing debris and chemicals. As a result, Debtor asserted it should be allowed to proceed with a § 363 sale of the Property to a third party who planned to develop the Property.

### 2. The Sale Motion

In April 2019, Debtor filed a motion for authorization to sell the Property free and clear of liens and interests though a private sale. Under the terms of the proposed sale, the buyer would pay $1,600,000 and take the Property subject to  Dr. Manchanda's first priority lien. Debtor argued that the sale should be free and clear of other liens and interests pursuant to § 363(f)(3) and (4) because the sale price was sufficient to pay all creditors and the liens of Miken, Glan, and the Receiver were subject to a bona fide dispute. Debtor asserted the Property could be sold free from the control of the Receiver and the state court action because the Property was no longer a health and safety hazard.

The City objected that the sale motion was based on two erroneous allegations: that the nuisance conditions at the Property had been abated, and that the sale of the Property would terminate the receivership. The City argued that Debtor conceded that the violations still existed because the Property had no plumbing or electricity, and that Debtor had cited no authority to support the contention that the receivership would terminate

upon sale of the Property. The City reiterated its argument that the bankruptcy filing was an attempt to forum shop and seek a different result than the state court's ruling.

The Receiver objected and argued that the attempted sale was in direct violation of the receivership order which charged the Receiver, and not a third party purchaser, with abating the violations on the Property. The Receiver asserted that although the pre-construction demolition and the hillside protection projects were completed, the Property still posed a substantial threat to the public and the state court-approved repairs had not been completed. The Receiver argued that the sale motion was an attempt to have the bankruptcy court act as a court of appeal over the state court receivership.

### 3. The Rulings

After a hearing, the bankruptcy court granted the motions to dismiss and denied the motion to sell the Property.

The bankruptcy court determined that Debtor filed the petition in bad faith for three reasons. First, the court found that Debtor filed the case as a litigation tactic to avoid implementation of the Receiver's plan and conceded this fact when it stated "the bankruptcy was filed to protect Debtor's assets from an additional $4 million in encumbrances for a redevelopment project that has nothing to do with remediating health and safety issues or a public nuisance." *Final Order* (April 23, 2019) at 12.

Second, the bankruptcy court determined that the case was essentially a two-party dispute over the competing plans to rehabilitate the Property which had already been the subject of significant argument before the state court. The court stated that Debtor offered no legitimate reason why the dispute should not be resolved by the state court.

Finally, the bankruptcy court applied the factors enumerated in *St. Paul Self Storage Ltd. P'ship v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580, (9th Cir. BAP 1995), and concluded that all of those factors weighed in favor of finding bad faith. Specifically, the court found that the Property was Debtor's only valuable asset, the Debtor was not operating and had no revenues to reorganize debt, and all unsecured creditors arose from the two party dispute in state court.

After finding bad faith, the bankruptcy court considered whether conversion, dismissal, or appointment of a chapter 11 trustee best served the interests of the creditors and the estate. Based on the existence of a pending state court action and the additional costs imposed by appointment of a trustee, the bankruptcy court dismissed the case and imposed a 180-day bar to refiling. The court also denied Debtor's sale motion, finding that it was proposed in furtherance of Debtor's bad faith tactic to evade state court orders. Debtor timely appealed.

C.     **Post-dismissal Events**

In its Opening Brief, Debtor provides a recitation of "new facts"

12

consisting of a post-dismissal state court ruling, which Debtor argues is likely to affect the outcome of this appeal. Debtor included a portion of the ruling in its Amended Appellant's Joint Supplemental Excerpts of Record which demonstrates that the state court later determined that the Property was not included on any historical resource list.

The City filed an objection and a motion to strike the post-dismissal state court rulings and portions of Debtor's brief that relate to that ruling, because the document was entered five months after the dismissal and was not before the bankruptcy court. The City argues that Debtor mischaracterized the state court ruling and that no definitive decision regarding the Property's status as a historical resource had been rendered. Regardless of the ultimate outcome of the matter, the City argues that any state court ruling which occurred after the bankruptcy was dismissed is irrelevant to this appeal. The City seeks sanctions against Debtor for its reasonable attorneys' fees in bringing the motion to strike.

Debtor argues that the new facts are extraordinary and should be considered by the Panel because they demonstrate that the facts provided to the bankruptcy court by the City and the Receiver ultimately turned out to not be entirely true. Debtor also argues that although it did not file a separate motion to supplement the record, its Opening Brief made it clear which facts and documents were new.

13

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in dismissing Debtor's chapter 11 case for bad faith?

Did the bankruptcy court abuse its discretion in denying Debtor's motion to sell the Property free and clear of liens and interests?

## STANDARD OF REVIEW

"We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a 'bad faith' filing. We review the finding of 'bad faith' for clear error." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (internal citations omitted).

We review orders on motions to sell property pursuant to § 363 for abuse of discretion. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 32 (9th Cir. BAP 2008).

We apply a two-step test to determine whether the bankruptcy court abused its discretion. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 611 (9th Cir. BAP 2014). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the requested relief. *Id.* Then we review the bankruptcy court's factual findings for clear error. *Id.*

"We must affirm the bankruptcy court's fact findings unless we

14

conclude that they are illogical, implausible, or without support in the record." *Id.* We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank Nat'l Assoc. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

### A. Debtor May Not Supplement The Record With Post-Dismissal State Court Rulings

As an initial matter, we must decide whether we will consider Debtor's supplemental excerpt of record. The City requests that we strike the Amended Appellant's Joint Supplemental Excerpts of Record and the portions of Debtor's Briefs which purport to rely on the subsequent state court decision, as well as sanction Debtor for reasonable attorneys' fees incurred in bringing the motion to strike.

The record on appeal consists of "the original papers and exhibits **filed in the district court**." *Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc.*, 289 F.3d 589, 593-94 (9th Cir. 2002). "Papers not filed with the district court or admitted into evidence by that court are not part of the record on appeal." *Id.* at 594 (quoting *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077 (9th Cir. 1988)). However, we can exercise inherent authority to supplement the record in extraordinary cases. *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003).

A party cannot "unilaterally supplement the record on appeal with evidence not reviewed by the court below," and any request to supplement

15

should be made by a formal request or motion. *Id.* at 1024-25. Debtor did not file a motion to supplement the record, but it did raise the issue in its opening brief so the Panel and opposing counsel were apprised of the documents.

However, Debtor has not demonstrated any extraordinary circumstances that would make the subsequent state court decision relevant to this appeal. *See Snow v. McDaniel*, 681 F.3d 978, 991-92 (9th Cir. 2012) (overruled on other grounds). Debtor states that it filed the state court decision as a supplemental excerpt of record in compliance with Rule 8014(f), but that rule only pertains to supplemental citations of authority to support a legal argument, not to supplemental facts offered for their probative value. Although we could take judicial notice of the state court decision, we cannot do so to establish the truth of any facts alleged therein. *See Credit Alliance Corp. v. Idaho Asphalt Supply, Inc. (In re Blumer)*, 95 B.R. 143, 146-47 (9th Cir. BAP 1988).

Because the subsequent state court decision was not before the bankruptcy court, it is not relevant to the bankruptcy court's decision or this appeal. The City's motion to strike is GRANTED. However, we decline to impose monetary sanctions at this time. *See* 9th Cir. BAP R. 8026-1; Circuit Rule 30-2.

**B.     The Bankruptcy Court Did Not Abuse Its Discretion In Dismissing The Case**

Section 1112(b) provides that the bankruptcy court shall convert or

dismiss a case "for cause," whichever is in the best interests of creditors and the estate, unless the court determines that appointment of a chapter 11 trustee or examiner is in the best interests of the estate. Debtor does not argue on appeal that the bankruptcy court should have converted the case or appointed a trustee or examiner, and therefore, we consider only whether the bankruptcy court erred in finding "cause" to dismiss the case. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

The bad faith filing of a bankruptcy petition constitutes "cause" for dismissal under § 1112(b). *In re Marsch*, 36 F.3d at 828. The analysis focuses on whether a debtor is attempting "to effect a speedy, efficient reorganization on a feasible basis" or "to unreasonably deter and harass creditors." *Id*. A petition is filed in bad faith if a debtor seeks to "achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.* A filing may also be in bad faith if it is "an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *In re Sullivan*, 522 B.R. at 616.

Bad faith depends on an amalgam of factors and no specific factor is determinative. *Idaho Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986). A bankruptcy court may consider any factor which demonstrates an abuse of the bankruptcy process and the purpose of reorganization. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th

17

Cir. 2013). A finding of bad faith is made on a case by case basis, there is no list of factors which must be present in each case to make the finding, and the weight given to any particular factor depends on the circumstances of the individual case. *Can-Alta Props., Ltd. v. State Sav. Mortg. Co. (In re Can-Alta Props., Ltd.)*, 87 B.R. 89, 91 (9th Cir. BAP 1988); *Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place)*, 30 B.R. 503, 506 (9th Cir. BAP 1983).

Here, the bankruptcy court determined that Debtor filed the case in bad faith as a litigation tactic to avoid state court rulings and that the case was essentially a two-party dispute. The court found that the factors we enumerated in *St. Paul Self Storage* weighed in favor of finding bad faith. In *St. Paul Self Storage* we said:

> To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether:
>
> (1) the debtor has only one asset;
> (2) the debtor has an ongoing business to reorganize;
> (3) there are any unsecured creditors;
> (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and
> (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

185 B.R. at 582-83.

Debtor does not dispute that the *St. Paul Self Storage* factors are appropriate factors to consider in determining whether a bankruptcy petition was filed in bad faith. Instead, Debtor argues that the bankruptcy court's application of these factors was illogical, implausible or without support in the record.

1.  **The Bankruptcy Court Did Not Err In Determining That The Bankruptcy Was A Litigation Tactic And A Two-Party Dispute Capable of Resolution In State Court**

The bankruptcy court determined that the case was a two-party dispute and Debtor filed the case as a litigation tactic to avoid the state court rulings. Debtor argues that the bankruptcy court erred because there were legitimate creditors besides the City who would have materially benefitted from the bankruptcy, and those creditors would not have been protected in the state court litigation due to the Receiver's plan to over-encumber the Property.

Debtor asserts that the Bankruptcy Code expressly provides for debtors whose assets are under the control of a receiver and empowers bankruptcy courts to end a state court receiver's possession by ordering turnover of the assets. Because virtually every bankruptcy filed after a receiver has been appointed will involve an attempt to dispossess the receiver, Debtor argues that filing a bankruptcy petition cannot be a litigation tactic designed to evade the receivership orders and cannot be considered forum shopping.

19

We agree that filing a bankruptcy petition during a pending receivership is not, per se, a litigation tactic or forum shopping. However, in the present case, the bankruptcy court did not clearly err in determining that Debtor filed the petition in bad faith.

Debtor's purpose in filing the bankruptcy case was to protect its assets from an additional $4 million in encumbrances necessary to complete the Receiver's remediation plan. Debtor argues that all health and safety concerns which necessitated the receivership were abated by the time of the bankruptcy filing and therefore, the Receiver's plan to restore the Property was a financial decision that would harm creditors and the Debtor.

If all health and safety issues were resolved, as Debtor argues, the state court could promptly make that determination and terminate the receivership. Debtor offers no credible argument why asking the bankruptcy court to make that decision instead of the state court is not forum shopping or an abuse of the Bankruptcy Code.

The dispute over the future restoration of the Property is entirely capable of prompt resolution in state court because this is not truly a financial reorganization. It is a question of what method should be employed to remediate the public nuisance at the Property. The state court considered and rejected Debtor's objections that the Receivers's proposed plan was unnecessary and would make operation of the Property

20

infeasible. The state court approved the Receiver's plan, authorized the increase in funding, and denied Debtor's motion to terminate the receivership.

We are cognizant that a health and safety receiver may take actions which go beyond the proper exercise of regulatory authority and are instead pecuniary in nature. In such a case, filing a bankruptcy to reorganize debts may not be an abuse of the Bankruptcy Code. But in the present case, the Receiver's plan was specifically approved by the state court as a means to fully abate the nuisance conditions on the Property.

The bankruptcy relief sought by Debtor would require the court to determine not only that the Receiver's actions were unnecessary to abate the nuisance, but also that the state court's decision approving the Receiver's plan was in error. The bankruptcy court lacks jurisdiction to hear a de facto appeal of a state court decision or to decide any issue "inextricably intertwined" with issues resolved by the state court decision. *See Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003).

The bankruptcy court did not clearly err in determining that the case was a two-party dispute capable of prompt adjudication in state court and that filing the case was a litigation tactic to avoid the state court's rulings.

2.      **The Remaining St. Paul Self Storage Factors Favor Dismissal**

The first two *St. Paul Self Storage* factors weigh in favor of dismissal. Debtor concedes that the Property is essentially its only asset and that it has

no ongoing business, but argues that these factors should be given little weight because single asset real estate cases are contemplated by the Code and even a non-operating business can use bankruptcy to liquidate. The bankruptcy court did not clearly err in determining that these factors favored dismissal.

The bankruptcy court also found that Debtor had no revenues and no ability to fund a reorganization. Debtor argues that the court erred because a sale under § 363 was an appropriate means to fund its reorganization, and the bankruptcy court failed to consider the benefit to creditors.

Filing a bankruptcy with the intent to sell property under § 363 to pay creditors might constitute a legitimate bankruptcy purpose under ordinary circumstances, but Debtor's sale motion is predicated on the bankruptcy court determining that the Receiver's plan was not necessary to abate the nuisance conditions. As we discuss above, it would not be proper for the bankruptcy court to make such a finding.

The bankruptcy court properly applied factors which we have stated are appropriate for determining bad faith in filing a petition, and the record supports the court's factual findings. The bankruptcy court did not clearly err in determining that the Debtor filed the case in bad faith and did not abuse its discretion in finding cause to dismiss the case.

C.    **The Bankruptcy Court Did Not Abuse Its Discretion In Denying The Sale Motion**

The bankruptcy court denied Debtor's motion to sell the Property

because it concluded that the motion was part of Debtor's bad faith objective of divesting control of the Property from the Receiver. Debtor argues that the bankruptcy court failed to consider that there was a legitimate business purpose for the sale which would pay creditors in full.

The bankruptcy court properly determined that the petition was filed in bad faith. Regardless of whether there was a business purpose for the sale, once the bankruptcy court found cause to dismiss or convert, there was no basis to grant Debtor's sale motion, even if some creditors might have benefitted.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's orders dismissing the case and its order denying Debtor's motion to sell the Property.