FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERNEST JOSEPH FRANCESCHI, JR., Attorney, an individual, *Plaintiff-Appellant*, <br><br> v. <br><br> BETTY T. YEE, President of California Franchise Tax Board in her Official Capacity; GEORGE RUNNER, Board Member of California Franchise Tax Board in his Official Capacity; JEAN SHIOMOTO, Director of California Department of Motor Vehicles in her Official Capacity; MICHAEL COHEN, Board Member of California Franchise Tax Board in his Official Capacity, *Defendants-Appellees*. | No. 14-56493 <br><br> D.C. No. 2:14-cv-01960-CAS-SH <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted November 15, 2017
Pasadena, California

Filed April 11, 2018

Before:  Michael Daly Hawkins, Barrington D. Parker,[*]
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Parker

## SUMMARY[**]

### Tax

The panel affirmed the district court's judgment in an action under 42 U.S.C. § 1983, challenging the constitutionality of California Revenue and Tax Code § 19195 (which establishes a public list of the top 500 delinquent state taxpayers) and California Business and Professions Code § 494.5 (which provides for suspension of the driver's license of anyone on the top 500 list). The district court found the statutory scheme constitutional and dismissed the action under Federal Rule of Civil Procedure 12(b)(6).

The panel first held that the taxpayer was not deprived of procedural due process based on his contention that he had an inadequate opportunity to be heard prior to license revocation. The panel explained that California provides tax delinquents with a constitutionally adequate procedure to challenge the amount of their tax delinquency, either before or after the deprivation of a driver's license.

[*] The Honorable Barrington D. Parker, United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel next held that the taxpayer was not deprived of substantive due process based on his claims that the statutory scheme impermissibly burdened taxpayer's right to choose a profession, and that the scheme is retroactive. The panel observed that revocation of a driver's license does not operate as a complete prohibition on one's ability to practice law. The panel also explained that § 494.5 does not operate retroactively because it does not sanction taxpayer for past conduct, but for his current refusal to discharge his tax obligations.

The panel was unpersuaded by the taxpayer's equal protection claim, that the challenged statutes impermissibly single out taxpayers who fall within the class of California's 500 largest tax delinquents, resulting in unequal treatment of similarly situated individuals. The panel found a rational basis for state action against a citizen for failing to pay two years' worth of past-due taxes (as taxpayer had done), given California's legitimate and significant interest in the prompt collection of tax revenue.

Finally, the panel rejected the taxpayer's contention that the combined effect of the challenged statutes is to single out the largest 500 tax debtors for legislative punishment, amounting to a bill of attainder. The panel explained that membership in the group of taxpayers subject to suspension turns on the continuing fact of nonpayment, which a delinquent taxpayer can rectify.

## COUNSEL

Ernest J. Franceschi Jr. (argued), Franceschi Law Corporation, Los Angeles, California, pro se Plaintiff-Appellant.

Matthew C. Heyn (argued), Deputy Attorney General; Stephen Lew, Supervising Deputy Attorney General; Paul D. Gifford, Senior Assistant Attorney General; Office of the Attorney General, Los Angeles, California; for Defendants-Appellees.

## OPINION

PARKER, Circuit Judge:

This action challenges the constitutionality of Section 19195 of the California Revenue and Taxation Code and Section 494.5 of the California Business and Professions Code. Section 19195 establishes a public list of the top 500 delinquent state taxpayers who owe in excess of $100,000. In turn, Section 494.5 provides for suspension of the driver's license of a taxpayer on the delinquent list until full payment of the tax obligation is arranged.

Appellant Ernest J. Franceschi, Jr., Esq. is a major tax delinquent. Anticipating the suspension of his driver's license after the publication of the next edition of the top 500 list—which would include him—Franceschi sued, under 42 U.S.C § 1983, challenging Sections 19195 and 494.5 on various federal constitutional grounds. The District Court rejected his claims and dismissed the complaint. *See Franceschi v. Chiang*, No. 2:14-cv-01960-CAS-SH, 2014

WL 12069866 (C.D. Cal. Aug. 4, 2014). Franceschi appeals and we affirm.

## I. BACKGROUND

Franceschi is an attorney who has been licensed to practice law in California since 1984. Appellee Betty Yee is the chairwoman of the California Franchise Tax Board (the "*FTB*"); appellees George Runner and Michael Cohen are members of the FTB; and appellee Jean Shiomoto is the director of the California Department of Motor Vehicles.

Despite being a member of the bar for many years, Franceschi failed to file any California state income tax returns between 1995 and 2012 and failed to pay any state income taxes, penalties, or interest for those years, contending that he owed none. For each of those years, the FTB gave written notice of proposed deficiency assessments of taxes, interest and penalties (an "*NPA*").

California's Revenue and Taxation Code sets forth a framework under which a delinquent taxpayer, like Franceschi, has multiple opportunities to challenge deficiency assessments. Cal. Rev. & Tax Code § 19031, *et seq*. At the outset, the FTB is required to send the taxpayer notice of the proposed deficiency assessment for any tax deficiency it proposes to assess. *Id.* § 19033(a). The taxpayer may then file a protest within sixty days. *Id.* § 19041(a). If the taxpayer files a protest, the FTB must reconsider the assessment and, if the taxpayer so requests, grant the taxpayer a hearing on the deficiency. *Id.* § 19044(a). If the deficiency is not resolved at this stage, a taxpayer has further recourse by appealing to the State Board of Equalization. *Id.* § 19045. After the State Board of Equalization rules on the matter, a

still dissatisfied taxpayer can then petition the State Board of Equalization for rehearing. *Id.* § 19048.

Still further, a taxpayer has an additional opportunity to be heard on the validity of his or her tax delinquency by paying the taxes and filing a claim for refund with the FTB. *Id.* § 19382. Utilization of this procedure here would have permitted Franceschi to both challenge the original assessments and to retain his driver's licence while doing so. If the FTB denied the claim he could have sued for a refund in California Superior Court. Franceschi concedes that he did not avail himself of any of these multiple remedial procedures.

If, however, a taxpayer like Franceschi fails to protest the NPA within sixty days, the proposed deficiency assessment becomes final. *Id.* § 19042. Once the assessment becomes final, the FTB can demand payment and the amount owed becomes a lien on the taxpayer's real property in California. *Id.* §§ 19049, 19221.

The FTB compiles a list of the top 500 tax delinquents in the state (the "*Top 500 List*"). *Id.* § 19195(a). Specifically, Section 19195 directs the FTB to "make available as a matter of public record at least twice each calendar year a list of the 500 largest tax delinquencies in excess of one hundred thousand dollars ($100,000)[.]"[1] *Id.* Prior to placing a delinquent taxpayer on the Top 500 List, the FTB is required to provide thirty days' notice to the taxpayer. *Id.* § 19195(d).

---

[1] The Top 500 List includes the taxpayer's name and address, the amount of tax delinquency, the taxpayer's occupation, and the type, status, and license number of any occupational or professional license held by the tax delinquent. *Id.* § 19195(c).

If within thirty days after this notice, the delinquent taxpayer does not remit the amount due or make arrangements with the FTB for payment, the delinquent taxpayer is named on the Top 500 List. *Id.*

Important for this appeal, effective January 1, 2012, Section 494.5 was enacted to provide that a state governmental licensing entity "shall suspend" a license if a licensee's name is included on the Top 500 List.[2] Cal. Bus. & Prof. Code § 494.5(a)(1). Specifically, Section 494.5 provides that, on at least ninety days' notice, the California Department of Motor Vehicles "shall suspend" the driver's license of any licensee whose name is included on the Top 500 List. *Id.* § 494.5(a)(2), (b)(1), (f)(1).[3] Within this notice period, a delinquent taxpayer can challenge inclusion and seek to avoid revocation of a driver's license by (1) presenting a written submission that the tax delinquency was paid, (2) entering into a payment agreement, or (3) demonstrating financial hardship. *Id.* § 494.5(h).

Franceschi's cumulative tax deficit encompasses the years 1995 through 2012. After the enactment of Section 494.5 in 2012, the FTB, in April 2012, March 2013, and March 2014, served him with NPAs for the years 2010 through 2012. Franceschi then had sixty days to protest these additional proposed deficiencies. He took no steps to do so.

---

[2] Section 494.5 was originally passed in 2012 but was amended in 2013, in a manner not relevant here.

[3] Furthermore, the State Bar of California "may recommend to refuse to issue, reactivate, reinstate, or renew a license and may recommend to suspend a license if a licensee's name" is included on the Top 500 List. *Id.* § 494.5(a)(3), (b)(1).

Franceschi alleges that he received notice from the FTB dated February 2014 indicating that he was to be included in the next publication of the Top 500 List because he owed $242,276.73 in back taxes. Franceschi further alleges that he anticipated that the DMV would suspend his driver license after the next publication of the Top 500 List.

In an effort to forestall his suspension, Franceschi sued under 42 U.S.C. § 1983, asserting claims for violations of his procedural and substantive due process rights, and the Equal Protection Clause.[4]   In addition he claimed that the 2012 enactment of Section 494.5 constituted a bill of attainder. *See Franceschi*, 2014 WL 12069866, at *1.   Franceschi also sought a preliminary injunction seeking to prohibit the publication of his name on the Top 500 List and the suspension of his driver's license. During the pendency of this action, after the District Court denied Franceschi's application for interlocutory relief, the DMV suspended his driver's license.

The defendants moved to dismiss Franceschi's lawsuit under Federal Rule of Civil Procedure 12(b)(6). The District Court concluded that the statutory scheme Franceschi challenged was constitutional. It held, among other things, that Franceschi had received adequate notice and an opportunity to be heard before his license was suspended. It also determined that the application of Sections 19195 and 494.5 to him did not violate his substantive due process rights by impermissibly burdening his right to practice his profession or having retroactive effect, did not violate his

---

[4] Franceschi also brought a claim for violation of the Privileges or Immunities Clause which the District Court dismissed. On appeal, he abandons this claim.

equal protection rights, and did not constitute a bill of attainder. *Id.* at \*1–\*13. Accordingly, the District Court denied Franceschi's request for injunctive relief and dismissed his lawsuit.

This appeal followed. We review *de novo* the District Court's decision to dismiss Franceschi's complaint under Rule 12(b)(6). *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008).

## II. DISCUSSION

### A. Procedural Due Process

Franceschi's procedural due process claim has two elements. He must plausibly allege: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney* 249 F.3d 1142, 1150 (9th Cir. 2001) (citation omitted). Most licenses are constitutionally protected property and cannot be taken away without procedural due process required by the Fourteenth Amendment. *See Bell v. Burson*, 402 U.S. 535, 539 (1971). "[T]he Due Process Clause applies to the deprivation of a driver's license by the State[.]" *Dixon v. Love*, 431 U.S. 105, 112 (1971).

The essence of procedural due process is that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (quoting *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48, (1993)). It is well-established that because due process is a flexible concept, "[p]recisely what procedures the Due Process Clause requires in any given case is a function of context." *Brewster*

*v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

On appeal, Franceschi advances two main arguments why the challenged statutory scheme provides inadequate process prior to the deprivation of his driver's license. First, he argues that Section 494.5 does not provide an adequate opportunity to be heard prior to license revocation. Second, he argues that Section 494.5's payment plan and financial hardship exemptions are illusory. Neither of these contentions has merit.

The Supreme Court has held that a driver's license can be revoked without a pre-revocation hearing. *See Dixon*, 431 U.S. at 112–15. Franceschi has no response to *Dixon*. He nevertheless goes on to argue that he should have been afforded a pre-deprivation hearing. Specifically, Franceschi argues that at such a pre-deprivation hearing, he would have been able to demonstrate that his actual tax delinquency was below the threshold $100,000 for inclusion on the Top 500 List when time-barred assessments, interest and penalties on time-barred assessments are excluded.[5]

---

[5] Specifically, Franceschi argues that a substantial amount of his tax delinquency is time-barred by Section 13680 of the California Revenue & Taxation Code, which establishes a ten year statute of limitations. However, this is incorrect. Section 13680 is inapplicable because it only concerns the collection of gift and estate taxes, not the collection of income taxes, as the District Court correctly concluded. *See* Cal. Rev. & Tax. Code § 13680 (referring to the "collection of any tax imposed by *this part*" (emphasis added)); *see generally* Cal. Rev. & Tax. Code, Part 8 (referring to "Gift and Death taxes"). We note that to the extent that Franceschi can advance a credible argument that his tax delinquency is time-barred, he is free to do so in a refund action.

Franceschi's arguments overlook the fact that he had a readily available, constitutionally valid, pre-deprivation opportunity to prevent the suspension of his license. After receipt of the notice of revocation and before his license was suspended, Franceschi could have challenged his threatened suspension by paying his taxes and filing a refund claim with the FTB. *See* Cal. Rev. & Tax Code § 19382. The payment of his tax liability would have allowed him to retain his driver's license. He would then have the opportunity to file a refund claim and challenge the original tax assessment. In the event the FTB denied his refund claim, he could still obtain relief by suing for a refund in California Superior Court.

Courts have consistently held that pay first, litigate later procedures such as these satisfy due process in the context of tax collection. *See Todd v. United States*, 849 F.2d 365, 369 (9th Cir. 1998) (collecting Supreme Court cases holding that in the federal context, "taxpayers do not have the right to a hearing prior to collection efforts by the IRS"); *see also Bob Jones Univ. v. Simon*, 416 U.S. 725, 746–48 (1974); *Aronoff v. Franchise Tax Bd.*, 383 P.2d 409, 410 (Cal. 1963) ("The due process clause does not guarantee the right to judicial review of tax liability before payment." (quoting *Modern Barber Colls. v. Cal. Emp't Stabilization Comm'n*, 192 P.2d 916, 919 (Ca1. 1948))). More generally, where tax liability is involved, postponement of a judicial inquiry is not a denial of due process if the opportunity for an ultimate judicial determination of the tax liability is adequate. *See Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931) (observing that when an "adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently

sustained"). California, therefore, provides tax delinquents with a constitutionally adequate procedure to challenge the amount of their tax delinquency, either before or after the deprivation of a license under Section 494.5.

Moreover, as noted, Franceschi had multiple opportunities to challenge the tax deficiencies that the FTB proposed at the time of their assessment and well before he faced license suspension. For each of the years from 1995 through 2012, for which Franceschi failed to file a tax return, he received written notices of proposed deficiency assessments. Further, Franceschi does not contest that he received these notices and in fact concedes that he became obligated to the FTB as far back as 1995. These procedures afforded him multiple opportunities to challenge the validity of the assessments that led to the revocation of his driver's license. For whatever reason, he failed to avail himself of any of them. What Franceschi seeks is a forum in which to dispute his tax delinquencies well after the time they become final. Franceschi does, however, have access to such a forum, but must satisfy his tax deficiencies first.

This result is congruent with the three-part procedural due process test that the Supreme Court established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See, e.g.*, *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 619 n.12 (9th Cir. 2014). Under *Mathews* we consider (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest in minimizing the cost and burden of additional or substitute procedures. 424 U.S. at 335.

First, the private interest at issue here is a driver's license and, while subject to a level of constitutional protection, a driver's license is not a fundamental right and can be suspended without a prior hearing. *See Dixon*, 431 U.S. at 113–15. Second, the risk here that the challenged statutory scheme will result in the erroneous deprivation of a protected interest is low. The facts supporting the suspension have already been established through prior proceedings with adequate process involving multiple opportunities to challenge the deficiency assessments. *Cf. Air N. Am. v. Dep't of Transp.*, 937 F.2d 1427, 1438 (9th Cir. 1991) ("[T]he due process clause does not require a hearing when . . . there are no factual questions to resolve."). Franceschi nonetheless argues that he did not have the same incentive to challenge the deficiency assessments before Section 494.5 established that his license could be revoked. To the extent that Franceschi suggests that his lack of incentive to challenge the initial assessments created a greater risk of erroneous deprivation, we think that risk is adequately mitigated by the availability of a refund action under Section 19382. Finally, California obviously has a strong interest in revenue collection, and the challenged statutory scheme appropriately reflects the importance of this interest. *See Jolly v. United States*, 764 F.2d 642, 646 (9th Cir. 1985). In sum, we readily conclude that the *Mathews* factors have been met and that Franceschi was not denied procedural due process.

## B.  Substantive Due Process

Franceschi contends that the statutory scheme set forth in Sections 19195 and 494.5 violates his substantive due process rights in two respects: first, by impermissibly burdening his chosen profession, and, second, by acting retroactively. Neither argument has merit.

### 1.  Burden on Profession

The Due Process Clause of the Fourteenth Amendment includes "a substantive component that protects certain individual liberties from state interference[.]"  *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995); *see also Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (per curiam) (observing that the Due Process Clause protects individuals from state action that "interferes with rights implicit in the concept of ordered liberty" (internal quotation marks and citation omitted)).  The range of liberty interests that substantive due process protects is narrow and "[o]nly those aspects of liberty that we as a society traditionally have protected as fundamental are included within the substantive protection of the Due Process Clause."  *Mullins*, 57 F.3d at 793.  Substantive due process has, therefore, been largely confined to protecting fundamental liberty interests, such as marriage, procreation, contraception, family relationships, child rearing, education and a person's bodily integrity, which are "deeply rooted in this Nation's history and tradition."  *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977); *see also Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992).

A "right" to drive to work does not resemble any of these categories.  To be sure, the liberty component of the Due Process Clause includes a generalized right to choose one's field of employment, but that right is subject to reasonable government regulation.  *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (collecting cases). "[I]t is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations[,]" although the precise contours of this liberty interest have not been defined.  *Dittman v. California*,

191 F.3d 1020, 1029 (9th Cir. 1999) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 65 n.4 (9th Cir. 1994)). What is clear is that, as observed by the Supreme Court, "the line of authorities establishing the liberty interest [in pursuing a profession] 'all deal[] with a complete prohibition of the right to engage in a calling[.]'" *Id.* (quoting *Conn*, 526 U.S. at 292).

Franceschi argues that the enforcement of Sections 19195 and 494.5 violates his liberty interest in the pursuit of his profession because the ability to drive is essential to a "meaningful" pursuit of the practice of law and, thus, the suspension of an attorney's driver's license for reasons unrelated to public safety and solely attributable to tax indebtedness materially interferes with his constitutionally protected liberty interest to practice law without inconvenience.

This contention has no merit for the obvious reason that the revocation of his driver's license does not operate as a complete prohibition on his ability to practice law, which it must to violate substantive due process. Franceschi attempts to sidestep this straightforward requirement by arguing that a driver's license is "indispensable" to the practice of law while at the same time conceding that "it may be possible to get to some courts on a bus or other public transportation." He nevertheless argues doing so would be burdensome and time consuming. No doubt an inability to drive oneself around Los Angeles could make the practice of law more difficult. However, Franceschi still has access to public transit, taxis, or services such as Lyft or Uber. Accordingly, whatever burden may exist does not amount to a "complete prohibition" on Franceschi's ability to practice law, and thus, does not rise to a violation of substantive due process. *See*

*Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003) (holding that an "indirect and incidental burden on professional practice is far too removed from a complete prohibition to support a due process claim").

To resist this conclusion, Franceschi cites *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014), for the proposition that the inability to obtain a driver's license will likely result in irreparable harm. However, *Arizona Dream Act Coalition* is inapposite. There, the plaintiffs were undocumented immigrants who were brought to the United States as children and were allowed to remain pursuant to a federal program then in existence (the Deferred Action for Childhood Arrivals program). *Id.* at 1057–58. Arizona officials implemented a policy that denied driver's licenses to these individuals. *Id.* at 1058. The plaintiffs sought a preliminary injunction prohibiting the implementation of the policy, arguing that it violated the Equal Protection Clause and the Supremacy Clause. *Id.* The district court concluded that the policy violated the Equal Protection Clause but nonetheless denied the request for a preliminary injunction. *Id.* In reversing, this Court concluded that the plaintiffs demonstrated a likelihood of success on their equal protection claim and were likely to suffer irreparable harm unless the policy was enjoined because the lack of a driver's license "diminished their opportunities to pursue their chosen professions." *Id.* at 1068.

Here, Franceschi contends that in *Arizona Dream Act Coalition*, this Court implicitly recognized that the deprivation of a driver's license does not need to amount to a "complete prohibition" on the ability to pursue a profession for substantive due process purposes. All that needs to be shown, he contends, is that it operates as a "limitation" or

"diminishes opportunity" to pursue a chosen profession. However, *Arizona Dream Act Coalition* says nothing of the sort. On the contrary, *Arizona Dream Act Coalition* involved an equal protection claim and sheds little light on Franceschi's substantive due process claim. Concluding that, where plaintiffs have shown a likelihood of success on the merits of their equal protection claims, the denial of a driver's license would cause irreparable harm as required to support the issuance of an injunction, does not establish that the denial of a driver's license would amount to a substantive due process violation. Concededly, the revocation of Franceschi's driver's license will complicate his law practice. But this complication is not a substantive due process violation since it does not amount to a complete prohibition on his ability to practice law. *See Lowry*, 329 F.3d at 1023.

Even if Sections 19195 and 494.5 operated as a *de facto* complete prohibition on Franceschi's ability to practice law—which they do not—the sections would still withstand constitutional scrutiny. A state may regulate entry into a profession, so long as the regulation is rationally related both to a legitimate state interest and to the applicant's fitness or capacity to practice the profession. *Dittman*, 191 F.3d at 1030. When reviewing a challenge to a legislative act that does not infringe on a fundamental right, rational basis review applies, under which we need only determine "whether the legislation has a 'conceivable basis' on which it might survive constitutional scrutiny." *Id.* at 1031 (quoting *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1328 (9th Cir. 1985)).

Here, the ability to practice law in California is not a fundamental right, and Section 494.5 is related to a legitimate state interest: the collection of tax revenue. The government obviously has a powerful interest in the prompt collection of

revenue. *See Phillips*, 283 U.S. at 597. The "[f]ailure to honor legal commitments and obligations is a proper ground for refusing to issue a certificate as to the possession of the requisite character and moral fitness" for the practice of law. *Dittman*, 191 F.3d at 1032 (alteration in original) (citation omitted). It is therefore rational for California to require that those who practice law be current on tax obligations as a condition of licensure, as their failure to do so could speak to moral character. *See id.*; *c.f. People v. Cully*, 675 N.E.2d 1017, 1024 (Ill. Ct. App. 1997) (noting that "[i]f the licensee culpably does not repay [his student loan], this calls his moral character into question and could constitute conduct that defrauds or harms the public"). Accordingly, the challenged statutory scheme does not impermissibly burden Franceschi's chosen profession.

## 2. Retroactivity

Franceschi argues that the statutory scheme—and specifically Section 494.5's 2012 enactment—violates substantive due process by operating retroactively to impose a penalty that did not exist at the time his tax deficiencies were first assessed in 1995. A statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994) (internal citation omitted). A statute operates retroactively when it "attaches new legal consequences to events completed before its enactment." *Id.* at 269–70; *see also Gen. Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992).

Section 494.5 does not operate retroactively because it does not sanction Franceschi for past conduct: the incurrence

of past-due tax obligations. Rather it is his current refusal to discharge his tax obligations that exposes him to license revocation. In other words, the effective date of Section 494.5 is not dispositive because Section 494.5's sanction is dependent on a taxpayer's current conduct (whether a taxpayer takes steps to discharge a past-due tax obligation) and not on past conduct (the incurrence of a past-due tax obligation). Consequently, Section 494.5 does not attach new legal consequences to events completed before its enactment. Moreover, after Section 494.5 was enacted, Franceschi received additional proposed assessments in April 2012, March 2013, and March 2014, all of which he ignored. For these reasons, this substantive due process claim fails.

## C. Equal Protection

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Governmental conduct, such as revocation of a driver's license, that "neither proceeds along suspect lines nor infringes fundamental constitutional rights" is subject to rational basis review and, as such, does not violate the Equal Protection Clause "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) (citation omitted); *see also Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012).

Franceschi argues that Section 494.5, together with Section 19195, impermissibly singles out taxpayers who fall within the class of California's 500 largest tax delinquents (provided they owe more than $100,000). Franceschi contends that because this selection criteria has the effect of

meting out unequal treatment to similarly situated individuals, it is arbitrary and unreasonable.**[6]**

We have no difficulty in concluding that a citizen's failure for nearly twenty years to pay unusually large amounts of past-due taxes supplies a rational basis for the state's action. This is especially so because legislatures have particularly "broad latitude in creating classifications and distinctions in tax statutes." *Armour*, 566 U.S. at 680 (quoting *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 547 (1983)).

California has a legitimate—and significant—interest in the prompt collection of tax revenue. *See Jolly*, 764 F.2d at 646. As the District Court correctly concluded, the California legislature's decision to single out the 500 individuals and corporations with the largest tax delinquencies via Section 19195 and then impose sanctions on that group through Section 494.5 is rationally related to California's legitimate interest in the prompt collection of tax revenue. Although the California legislature could have established an incrementally higher or lower threshold for tax delinquency, that the legislature chose a $100,000 cutoff does not render the statutory scheme unconstitutional. *See Beach Commc'ns*, 508 U.S. at 316 (noting that "the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration" (alteration in

---

**[6]** For the first time on appeal, Franceschi argues that the public disclosure of his alleged tax liability on the Top 500 List violates his right to privacy under the California Constitution. We decline to reach this contention. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (observing that, as a general rule, the court does not consider arguments that are raised for the first time on appeal).

original) (quoting *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980))).    For these reasons, Franceschi's equal protection claim fails.

## D.  Bill of Attainder

Franceschi next contends that Sections 19195 and 494.5 together constitute a bill of attainder.  The Constitution provides that "[n]o State shall . . . pass any Bill of Attainder[.]"  U.S. Const. art. I, § 10, cl. 1.[7]  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  *SeaRiver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)); *see also Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 817 (9th Cir. 2016).

The key features of a bill of attainder are "that the statute (1) specifies the affected persons and (2) inflicts punishment (3) without a judicial trial."  *SeaRiver*, 309 F.3d at 668 (citing *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 847 (1984)).  The "clearest proof" is required before courts can conclude that a legislative enactment is as a bill of attainder.  *Id.* (citing *Communist Party of United*

---

[7] The United States Constitution contains two sections prohibiting the passage of a bill of attainder, one aimed at the federal government (Article I, Section 9, Clause 3) and one aimed at the states (Article I, Section 10, Clause 1).  The same analysis applies to both sections.  *See SeaRiver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 672 n.6 (9th Cir. 2002); *see also Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 816 n.5 (9th Cir. 2016).  Accordingly, we rely on cases interpreting either section in assessing the constitutionality of Sections 19195 and 494.5.

*States v. Subversive Activities Control Bd.*, 367 U.S. 1, 83 (1961)).

Not every law which burdens some persons or groups is a bill of attainder; after all, practically every law burdens someone. "How the class is designated and what purposes the law furthers governs the specificity analysis[.]" *United States v. Munsterman*, 177 F.3d 1139, 1142 (9th Cir. 1999). "If a law merely designates a properly general characteristic . . . and then imposes upon all who have that characteristic a remedial measure reasonably calculated to achieve a nonpunitive purpose," there is no attainder. *Id.* (quoting Laurence H. Tribe, *American Constitutional Law* § 10-4 at 643 (2d ed. 1988)). Franceschi contends that the combined effect of Sections 19195 and 494.5 is to single out the largest 500 tax debtors for legislative punishment and for these reasons the sections constitute a bill of attainder. This contention has no merit.

In considering whether a statute singles out a person or class, we look to various established guideposts. *See SeaRiver*, 309 F.3d at 669. "First, we look to whether the statute or provision explicitly names the individual or class, or instead describes the affected population in terms of general applicability." *Id.* (citation omitted). Sections 19195 and 494.5 do not expressly name Franceschi. He does not contend that when the provisions were enacted anyone in the legislature had him in mind as opposed to the thousands of other residents who were persistently delinquent in their taxes. To the contrary, Section 19195 is couched in general terms and Section 494.5 simply refers to Section 19195. Accordingly, this factor weighs against the conclusion that the Sections constitute a bill of attainder.

Second, we determine "whether the identity of the individual or class was 'easily ascertainable' when the legislation was passed." *Id.* (quoting *United States v. Brown*, 381 U.S. 437, 448–49 (1965)). The group of the 500 largest tax delinquents with delinquencies over $100,000 was no doubt ascertainable at the time Section 494.5 was enacted, as the list could have been calculated. But this fact adds little to the analysis because the list was fluid. Such taxpayers may have paid their taxes, prevailed in litigation, died, or filed for bankruptcy. Thus, at the time Section 494.5 was enacted, there was manifest uncertainty as to who would be affected.

"Third, we examine whether the legislation defines the individual class 'by past conduct [that] operates only as a designation of particular persons.'" *Id.* (alteration in original) (quoting *Selective Serv. Sys.*, 468 U.S. at 847). "Thus, this third inquiry seeks to determine whether the statute is retrospective, or whether it carries the potential to encompass a larger class than the individual or group allegedly targeted." *Id.* at 670.

As noted, the Top 500 List is not static. Section 19195 directs the FTB to update the list twice a year, and the 500 largest tax delinquents will not necessarily remain the same on different versions of the List. In this way, Sections 19195 and 494.5 can affect a growing number of persons over time and their effect is not limited to any particular group in existence at the time of the statute's enactment. Accordingly, this factor weighs against the conclusion that Sections 19195 and 494.5 specify the affected persons.

Franceschi, however, argues that the Top 500 List's fluidity is "of no moment" because the category itself, the "Top 500 tax delinquents," remains constant even though

particular members "come and go" from the list. In support, Franceschi cites *Brown*, 381 U.S. 437. This argument makes no sense. If names "come and go" from a list, then the list does not remain constant. Moreover, Franceschi misunderstands both *Brown* and the specificity requirement. In *Brown*, the Supreme Court held that a statute that imposed criminal liability upon Communist Party members who became officers in labor unions was a bill of attainder. *Brown*, 381 U.S. at 456–62. In doing so the Supreme Court rejected the argument that the challenged statute did not constitute a bill of attainder because it did not "inflict[] its deprivation" upon named individuals but instead targeted the membership of the Communist Party. *Id.* at 461 ("We cannot agree that the fact that [the challenged statue] inflicts its deprivation upon the membership of the Communist Party rather than upon a list of named individuals takes it out of the category of bills of attainder."). However, the Supreme Court in *Brown* held that certain individuals were targeted, and, as such, the specificity requirement was clearly met there. *See id.* at 452 ("The moment [the challenged statue] was enacted, respondent was given the choice of declining a leadership position in his union or incurring criminal liability."). Tellingly, the statute in question in *Brown* had a trailing five-year disqualification period: it disqualified from holding union office not just present members of the Communist Party but also any one who within the previous five years had been a member of the Communist Party, an easily ascertainable group. *See id.* at 458. The situation here is different. Franceschi does not dispute that the group of taxpayers who find themselves subject to suspension is not static. And even more importantly, these taxpayers have the power to escape license revocation by fulfilling their tax obligations.

"Finally, we review whether the past conduct defining the affected individual or group consists of 'irrevocable acts committed by them.'" *SeaRiver*, 309 F.3d at 669 (quoting *Selective Serv. Sys.*, 468 U.S. at 848). "If the defining act is irrevocable, the individual or class may not escape the effect of the legislation by correcting the past conduct, thereby exiting the targeted class." *Id.* at 671 (citing *Selective Serv. Sys.*, 468 U.S. at 851). Sections 19195 and 494.5 do not focus on irrevocable conduct. The non-payment of delinquent taxes is the action that led Franceschi (and others) onto the Top 500 List and to license suspension. A taxpayer can escape publication on the Top 500 List (and the attendant consequences) by, among other ways, making other payment arrangements with the FTB for full satisfaction of the tax delinquency, filing for bankruptcy protection, or making payment arrangements satisfactory to the FTB. *See* Cal. Rev. & Tax. Code § 19195(b). Franceschi argues that it "appears" that the exemptions and releases from a Top 500 List are granted or denied in a "completely arbitrary and capricious manner," and that, as such, the methods which the statute provides for exiting the list are "largely illusory." However, Franceschi does not allege that he ever applied for or was denied a release from the Top 500 List, arbitrarily or otherwise. In the absence of plausibly pleaded allegations of arbitrary and capricious administration of the Top 500 List, we need not entertain his bare argument on appeal that the list is administered in such a manner.

In sum, far from being triggered by past and ineradicable actions, license suspension as a result of Sections 19195 and 494.5 turns on the continuing fact of nonpayment, something which a delinquent taxpayer can rectify. *Selective Serv. Sys.*, 468 U.S. at 851 (citing *Communist Party*, 367 U.S. at 81). Because all the relevant guideposts point against Franceschi,

and because he has unquestionably not adduced the "clearest proof" that the statutory scheme constitutes a bill of attainder, we reject his contention that the statutory scheme constitutes a bill of attainder.[8]

### III.  CONCLUSION

For these reasons, we **AFFIRM** the judgment of the District Court.[9]

---

[8] Because Franceschi fails to show that Sections 19195 and 494.5 meet the specification prong of a bill of attainder claim, we need not consider whether the statutory scheme inflicts punishment or fail to provide a judicial trial.  *See Fowler Packing Co*., 844 F.3d at 809 (explaining that where one element is not satisfied, "we need not address whether [the statutes] satisfy the other two elements of a bill of attainder claim").

[9] We **GRANT** Franceschi's unopposed motions, filed February 24, 2015 and February 27, 2015, to take judicial notice of orders in other proceedings. *See United States v. Navarro*, 800 F.3d 1104, 1109 n.3 (9th Cir. 2015).  We also **GRANT** Appellees' unopposed motion, filed April 30, 2015, to take judicial notice of legislative history pertaining to Section 494.5. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012).